Stoller v. Coates.

STOLLER *et al.* v. COATES, *Assignee, Appellant.*

1.  **Bank**: TRUST FUND : RELATION OF CREDITOR AND DEBTOR. The Mastin Bank of Kansas City received a draft on deposit to the creditor of the depositors, and thereupon the latter drew their check on the bank, with the request that it should place the proceeds of the same in the Exchange Bank of Denver, Colorado, to the credit of one E, which the Mastin Bank agreed to do. The Exchange Bank was a correspondent of the Mastin Bank, and the latter bank gave the depositors a memorandum addressed to the Exchange

Stoller v. Coates.

Bank, stating that the account of the latter had been credited with the amount of the check to the use of E. The memorandum was at once sent by the depositors to E, and the Mastin Bank also sent a copy of the same by mail to the Exchange Bank, but before it arrived the Mastin Bank had closed its doors and made an assignment for the benefit of its creditors. The Exchange Bank refused to charge the amount to the Mastin Bank, or to place it to the use of E, or to pay the same to him. *Held*, the Exchange Bank having so refused to accept the credit, the fund remained in the Mastin Bank impressed with the trust, and the relation of general creditors was not created between the depositors and the Mastin Bank.

2. **Trust Fund,** CONVERSION OF: PREFERRED DEMAND. The general assets of the Mastin Bank having received the benefit of the unlawful conversion, the bank is chargeable with the amount of the converted fund as a preferred demand.

3. ——, DIVERSION OF. While it may be impossible to follow a fund into its diverted use, it is always possible to make it a charge upon the estate or assets to the increase or benefit of which it had been appropriated.

4. **Estoppel.** The allowance, however, in favor of the plaintiffs of their claim as a debt against the general assets of the bank, estops them to claim in equity for the conversion of a trust fund.

*Appeal from Jackson Circuit Court.*—HON. TURNER A. GILL, Judge.

REVERSED.

*Karnes & Ess* for appellant.

(1) The relation between the plaintiffs and the Mastin Bank was not a trust, but one of debtor and creditor. (2) The money sought to be recovered in this action was first deposited with other money, by Stoller & Hill, to their credit. A check was then drawn for the purpose of placing in the Exchange Bank of Denver, for Earnest, the net proceeds of his cattle. Whatever may have been then said, it is certain that the money, as a matter of fact, remained in the Mastin Bank to the credit of the Exchange Bank, and while thus entering into and constituting a part of the entire balance of assets and liabili-

ties of the Mastin Bank, the transfer was made to the assignee. If a trustee has converted a trust fund into money and mingled the proceeds with his other moneys, so that they are undistinguishable, the *cestui que trust* cannot follow his funds into the hands of an assignee, or of an executor of such trustee, but must occupy the position of a general creditor of the estate. *Mills v. Post*, 76 Mo. 426; s. c., 7 Mo. App. 519; *Bank v. Bank*, 15 Fed. Rep. 858; *People v. Bank*, 78 N. Y. 269; *Bank v. Russell*, 2 Dillon, 215; *In re Coan Mfg. Co.*, 12 N. B. R. 203; Story's Eq. Jur., secs. 1258-9; *Kip v. Bank*, 10 Johns. 62; *Trecothick v. Austin*, 4 Mason, 29; *Thompson's Appeal*, 22 Pa. St. 16; *Whitcomb v. Jacob*, 1 Salk. 160.

*L. C. Slavens* for respondents.

(1) The Mastin Bank took the money in trust under instructions to place it in the Exchange Bank, and it makes no difference why they failed to do it, if they did fail, the trust relation still exists. (2) When plaintiffs gave their check to the Mastin Bank for the net amount to be sent to the Exchange Bank, it was equivalent to drawing out the actual money and handing it back to the Mastin Bank for that purpose. The money did not pass to Coates by the assignment, because the bank did not own it; it simply held it in trust to do with it as Stoller & Hill had directed it to do. *City v. Johnson*, 5 Dillon, 241. (3) The fact that plaintiffs proved up their claim before the assignee will not defeat their recovery in this action. *Bank v. Coates*, 3 McCrary, 9.

MARTIN, C.—This is a suit in equity to compel the defendant to pay over to plaintiffs the sum of $3,757.67 in full, that being the amount of a fund received by the Mastin Bank in trust for plaintiffs before its failure, and not vesting in the defendant, as assignee, for general creditors.

In July, 1878, one F. P. Earnest, of Colorado, consigned to plaintiffs, under the firm name of Stoller & Hill, of Kansas City, ten car loads of cattle, for the purpose of being sold for his account. Stoller & Hill were requested, by instructions accompanying the consignment, to deposit the proceeds of sale in the Exchange Bank of Colorado, to his, the consignor's, credit. The gross proceeds of sale amounted to $3,769.75, in the form of a draft. With this draft, Mr. Hale, book-keeper of Stoller & Hill, repaired to the Mastin Bank for the purpose of carrying out the instructions of the consignor as to remission of the proceeds. The net proceeds payable to the consignor were a little less than the draft, so that it became necessary to take the surplus from the draft, or amount of gross proceeds. Accordingly, the draft was deposited to the credit of Stoller & Hill, and immediately thereafter Mr. Hale drew the partnership check of his principals in the sum of $3,757.56, that being the net proceeds to be transmitted to the consignor in Colorado. This check, payable to the bank or to Stoller & Hill, and indorsed by them, was delivered to the bank, with the request that they (the bank) should place the proceeds thereof in the Exchange Bank of Denver, in Colorado, to the credit of Mr. Earnest, the consignor. Mr. Hale testifies that the bank, through its agent, Mr. Boarman, now deceased, agreed to do this. The difficulty presented in the case arises from the method adopted by the bank, presumably with the approbation of Mr. Hale, to transmit the funds. The Exchange Bank of Colorado was a correspondent of the Mastin Bank; accordingly that bank handed to Mr. Hale the following receipt, or memorandum, addressed to the Exchange Bank:

"THE MASTIN BANK,

"KANSAS CITY, Mo., August 1, 1878.

"Exchange Bank of Denver, Colorado:

"Your account has credit $3,757.56, deposited by Stoller & Hill, for the use of F. P. Earnest.

"Very respectfully,

"JOHN J. MASTIN, Cashier.

"Per J. A. BOARMAN, Teller."

Stoller & Hill at once sent this memorandum to Mr. Earnest, and the Mastin Bank sent a copy of the same by mail to the Exchange Bank, at Denver. Before it reached the Exchange Bank, the Mastin Bank had closed its doors and made an assignment to the defendant for the benefit of its creditors. The Exchange Bank refused to charge the amount to the Mastin Bank, or to place it on its books to the use of Mr. Earnest. It refused to recognize Earnest as having any claim for such credit, or to pay him the amount thereof.

If the Mastin Bank had remained solvent, it is probable that the credit of that bank would have been allowed to take the place of the actual funds, and that the amount would have been entered to the use of the consignor. Mr. Earnest, the consignor, sued Stoller & Hill for the proceeds of his cattle, and recovered judgment, which has been paid. Stoller & Hill, having thus satisfied the claims of their principal, stand in his place, besides having rights of their own as dealers with the bank respecting the fund. Mr. Boarman, the teller of the Mastin Bank, is dead, and his version of the transaction is wanting. According to the books of the bank, the sum of $3,757.56 appears therein to the credit of the Exchange Bank of Denver, for the use of Earnest. It seems that Stoller & Hill proved up, before the assignee, their claim against the Mastin Bank in the name of the Exchange Bank of Denver, and received dividends thereon, which

they have credited upon their present claim, in the sum of $450.90. On these facts the court rendered judgment for plaintiffs in the full amount of their claim less the credits thereon, from which the defendant appeals.

I. It is contended by defendant that the fund claimed by plaintiffs was, with their consent, deposited in the Mastin Bank to the credit of the Exchange Bank of Denver, for the use of Earnest, and that the Mastin Bank thereafter became a debtor for the money so deposited, and that the plaintiffs retained no right to the same except as creditors. Their right to a specific fund in trust is denied. I am not favorably impressed with this view of the transaction. If the credit attempted by the Mastin Bank had been perfected, I am inclined to think the position of defendant would be tenable. When Stoller & Hill drew their check for $3,757.56 on the Mastin Bank, and delivered the same to the bank, payable to the bank, or indorsed over to it, they placed a specific fund in the hands of the bank. The bank was also advised sufficiently that Mr. Earnest was the ultimate owner or beneficiary of the fund. The bank agreed to transmit this fund to the Exchange Bank of Denver, to be received by said bank to the use of Earnest. The Mastin Bank, in good faith, believed that the same end could be accomplished by a system of credits between the two banks. Stoller & Hill's agent evidently thought so too. The Mastin Bank attempted to accomplish the same end by substituting good credit for the fund. Now, it is apparent that the plan adopted required the consent of another party, and that it could not be effective without such consent. The plan could not be accomplished by the mere act of the Mastin Bank entering a credit on its books in favor of the Exchange Bank for the use of Earnest. The Exchange Bank could not be made a debtor to Mr. Earnest without its consent, or without receiving his money. The plan adopted required a corresponding entry in the books of the Exchange Bank

against the Mastin Bank for the use of Mr. Earnest. This corresponding entry the Exchange Bank never made. It positively declined to accept the credit tendered to it, on the faith of which it was required to pay $3,757.56 to Mr. Earnest when he called for it. At the time it received advice of the credit tendered, the bank tendering it was insolvent, and it had good reason for declining. It could have declined without any reason or cause whatever. The fact that it did decline nullifies the plan adopted for transmission of the fund to Colorado. It also nullifies the credit entered in the Mastin Bank to the Exchange Bank for the use of Earnest. The Exchange Bank refusing the credit, there could, in truth, be none in the Mastin Bank, whatever might appear on its books. It follows, therefore, that the unaccomplished credit to the Exchange Bank left the funds in the hands of the Mastin Bank still impressed with the trust. No other appropriation of them was contemplated by the parties, and Stoller & Hill certainly consented to none other.

II.   It is claimed by defendant that while the unaccepted credit to the Exchange Bank of Colorado remained on the books of the Mastin Bank, the money upon which it was based went into the general assets of the bank, and was paid out on other liabilities of the bank. It must be apparent that the plaintiffs consented to the credit upon condition that the credit would be perfected by the consent of the Exchange Bank. Without such consent there could be no genuine credit. Having turned the fund into the general assets of the bank, without furnishing the credit upon faith of which it was received, the bank, in doing so, effected an unlawful conversion of it. The defendant claims that the plaintiffs cannot follow the fund after it was thus mingled with the other assets of the bank, so as to be distinguishable from them. The authorities cited by defendant would seem to support this position. But in the recent case of *Harrison v.*

*Smith*, 83 Mo. 210, the doctrine contended for has undergone a material modification. While it may be impossible to follow.the fund in its diverted uses, it is always possible to make it a charge upon the estate or assets, to the increase or benefit of which it has been appropriated. The general assets of the bank having received the benefit of the unlawful conversion, there is nothing inequitable in charging them with the amount of the converted fund, as a preferred demand.

III. The most serious embarrassment which the plaintiffs encounter in maintaining their suit, results from their previous voluntary proceedings before the assignee. It seems, from the evidence, that Mr. Earnest sued the plaintiffs in the Circuit Court of the United States in Colorado, for the proceeds of the cattle sold by them, and that while the suit was pending the parties to it entered into a written agreement, which recites the fact that the proceeds of the sale were deposited in the Mastin Bank by Stoller & Hill to the credit of the Exchange Bank of Colorado, to the use of F. P. Earnest, and provides that the party who may be defeated in the action pending, may recover the indebtedness so as aforesaid deposited with the Mastin Bank, and that the claim be presented for allowance to the assignee of the bank in the name of F. P. Earnest and Stoller & Hill, and that the dividends received thereon be collected and finally paid over to the losing party. In pursuance of this agreement the claim was presented to the assignee by the parties thereto. I infer, from the pleadings and evidence, that it was presented and allowed against the general assets in favor of the Exchange Bank to the use of Earnest. Now, this allowance was in strict conformity with the credit on the books of the Mastin Bank. The plaintiffs, after being defeated in the Colorado suit, paid Earnest in full of his demand against them. By virtue of such payment and the agreement with him, they became entitled to the claim, which they had proved up to his use. As owners thereof, the plaintiffs have received

the sum of $450.90, in dividends, from the general assets of the Mastin Bank. These dividends were paid to them by the assignee upon the claim as it was proved up, and the character in which they were received cannot be changed by the plaintiffs entering a voluntary credit of the same amount on their present demand. If the claim had been proven up as for a special trust fund, there might be no inconsistency between it and the present suit. But I am unable to perceive how those two demands can stand together. The claim upon which the plaintiffs have received their dividends rests upon the debt of the bank, evidenced by the credit in favor of Earnest. This debt resulted from pouring the fund into the general assets of the bank, and substituting therefor the credit of the bank.

The present suit proceeds upon the theory that the debt arising from the credit was never affected by reason of the Exchange Bank's refusal to accept it in place of money, and that consequently the fund was unlawfully converted to the use of the bank. After having resurrected the repudiated credit, and established it as a true demand against the general assets of the bank, which has been realized by plaintiffs to the extent of the assets distributable thereon, they are clearly barred from prosecuting their present claim for the specific fund. The bank is certainly not liable on both claims. Yet such would be the result if the plaintiffs were allowed to maintain their present suit. They stand in a court of equity which will look at the substance and truth of the previous proceedings before the assignee. It cannot fail to notice that the Exchange Bank had nothing to do with them, and that they were conducted at the instance of plaintiffs, who have received the proceeds thereof. They will not be permitted to occupy inconsistent and contradictory relations to the estate they are pursuing. Having received their *pro rata* share of the general assets of the bank, including the disputed deposit, upon their claim as a simple debt against the bank, they cannot be

permitted to impeach the fact upon which they succeeded, and maintain that the bank was not a debtor for the money so deposited, but only a special trustee thereof, and that the fund delivered to it, or its equivalent, must be returned from the assets of the bank, as in case of an unlawful conversion. The allowance of their claim as a debt against the general assets of the bank ratified and confirmed the original credit for the deposit as it appeared on the books of the bank, and constitutes a negation of their present claim in equity for conversion of a specific fund. I am satisfied that this conclusion is the only one tenable on principle, and that it is in accord with the decisions of this court on analogous questions. *Valentine v. Decker*, 43 Mo. 583; *Hatcher v. Winters*, 71 Mo. 30.

Counsel for plaintiffs call attention to the case of *Bank v. Coates*, 3 McCrary, 9, in which it was held that the owner of a check, drawn by the Mastin Bank upon its correspondent in New York, might enforce it as the appropriation or assignment of the specific money called for in the check, after having presented it to the assignee and received dividends upon its allowance as a debt against the general assets. The learned judge, rendering the decision, remarks that the two remedies are not inconsistent. The point is not discussed or considered in the opinion of the court. Without stopping to consider the correctness of the ruling in that case, I have only to say that I fail to find in the opinion any satisfactory guide for the determination of this case.

In accordance with these views the judgment of the circuit court ought to be reversed, and the plaintiffs' bill dismissed. All concurring, it is so ordered.*

---

* Black, J., did not participate in the decision of this cause. To be filed as opinion of the court. It was approved before Commissioner Martin's office expired.