THE I. X. L. PRESSED BRICK COMPANY, Respondent, v. HENRY J. SCHOENEICH, Administrator of Partnership Estate of S. H. MERTEN & COMPANY, Appellant.

St. Louis Court of Appeals, February 25, 1896.

1. **Trusts:** FOLLOWING TRUST FUNDS. When it is clearly shown that trust funds have gone into an estate which is sought to be charged therewith, and that it has swelled the existing assets, the general estate will be subjected to a lien therefor though the funds can not be traced into any particular assets.

2. ———: ———. A member of a certain firm was the secretary of a private corporation, and as such secretary had charge of the corporate funds. He mixed money of the corporation with that of the firm, partly by depositing it in bank to the credit of the firm and partly by placing it in the money drawer of the firm. On his death his estate as well as the partnership estate and the surviving partners were found to be insolvent. *Held*, under the foregoing rule, that the claim of the corporation for the diverted funds was an equitable lien on the partnership estate.

3. ———: ———: CONSENT OF BOARD OF DIRECTORS OF CORPORATION TO DIVERSION OF CORPORATE FUNDS. The board of directors of a private corporation (when there are other shareholders) can not bind the corporation by consenting to the conversion of corporate funds by an officer of the corporation to his own use. Accordingly, the funds so converted may, despite such consent, be followed as trust funds into the hands of persons who would otherwise be chargeable therewith.

*Appeal from the St. Charles Circuit Court.*—Hon. E. M. HUGHES, Judge.

AFFIRMED.

*Carl Daudt* for appellant.

*Theodore Bruere & Son* for respondent.

BIGGS, J.—The plaintiff is a business corporation organized under the laws of this state, and for several years past it has been making and selling brick in the city of St. Charles. Prior to September 18, 1893, the firm of S. H. Merten & Company was engaged in the manufacture and sale of flour in the same city. The firm was composed of Stephen H. Merten, John F. Hackmann and William Hackmann. John F. was the bookkeeper and financial man of the firm. He died on the eighteenth day of September, 1893, and the defendant Schoeneich was appointed administrator of the partnership estate. John F. was also the secretary of the plaintiff corporation, and it was his duty under the by-laws to receive and receipt for all money due the corporation, and at least once a week pay it over to plaintiff's treasurer. It was also his duty to draw warrants for all money due from the corporation, which warrants were directed to, and were payable by, the treasurer. The present action was begun for the purpose of impressing the assets of the firm with a trust in favor of the plaintiff to the extent of a balance alleged to have been deposited with S. H. Merten & Company by John F. Hackmann, the plaintiff's secretary. The ground of the alleged equity is that John F. Hackmann wrongfully mixed the money collected for plaintiff with that of the milling company, in this, that, instead of paying such money to the plaintiff's treasurer as the

by-laws required him to do, he wrongfully deposited it to the credit of S. H. Merten & Company. It was also alleged in the bill that the estate of John F. Hackmann and the firm of S. H. Merten & Company, as well as its surviving members, are insolvent. The decree was for the plaintiff, and it recites that the business of the plaintiff was conducted in the manner stated, and that, at the time of the death of John F. Hackmann, there should have been in his hands as secretary the sum of $668.50, which sum was reduced a few days after his death to $639.50; that this money had been wrongfully deposited to the credit of S. H. Merten & Company, and that the estate of John F. Hackmann was insolvent, and that the firm and its surviving members were likewise insolvent. The court then declared the amount so deposited a special lien on the assets of S. H. Merten & Company and the defendant was ordered to pay the same out of the funds in his hands. From that judgment the defendant has appealed, and he insists that there is no evidence that John F. Hackmann, as secretary, had that amount of money in his hands, or any other amount; that the court erred in the admission of evidence; and that the plaintiff is not entitled to the relief granted, nor to any relief.

The evidence leaves no doubt that John F. Hackmann mixed the money of the plaintiff with that of the milling company. It was either deposited by him in bank to the credit of S. H. Merten & Company, or was put into the money drawer of the mill, where it was paid out together with the money of the milling company in settlement of claims against both concerns. The warrants issued for claims against the plaintiff were paid by him either with checks of Merten & Company, or with money from the drawer. No account of plaintiff's transactions was kept in the books of the firm, but Hackmann kept a separate journal, which

showed the amount received by him as secretary from January 1, 1893, up to his death, and it also showed the amount which he had paid on account of plaintiff between the same dates. This book shows amount of debits $8,799.40 and credits $8,433.40, leaving a balance of $366. In addition to the amount shown by the books the plaintiff introduced evidence tending to prove that Hackmann received from Bull & Son $300 for brick sold to them by plaintiff, and also $2.50 paid to him by Herman Bode, making a total balance of $668.50, the amount found to be due by the court. Against this finding the defendant contends that, if the amounts paid by Bull & Son and Bode be taken into account, the total receipts by Hackmann would be $9,101.90, from which ought to be deducted the total amount of warrants issued during the time, to wit, $9,048, which would leave a balance of $53.90. The difficulty with this contention is that the record does not show that Hackmann paid all of the warrants. Some of them might have been outstanding, or paid by the treasurer. The book kept by Hackmann purports to show the state of his accounts as secretary, and for the purpose of this investigation must be taken as *prima facie* correct.

The claim, that there is no evidence tending to prove that Hackmann received the money from Bull & Son, is not borne out by the record. It appears that Hackmann's name was signed to the receipt by his brother, who was a partner in the mill, and one witness said that the brother received the money, but Hackmann's son testified that his father received the money.

At the time of the death of John F. Hackmann the assets of Merten & Company, consisting of cash, notes, accounts, and stock on hand, amounted to $47,163.90. Of this amount only $120.90 was cash. The debts of the concern footed up $74,000. It is claimed that the plaintiff's action must fail, for the

reason that the trust money can not be traced into a particular asset. This is the "ear mark" doctrine, which has been greatly modified by recent decisions. Where it is clearly shown that trust money has gone into the estate sought to be charged, thereby swelling its present assets, there is no reason why the general estate should not be charged with the amount of the converted funds, although the fund can not be traced into a particular asset. This is the doctrine of the cases of *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 Mo. 514; *National Bank v. Sanford*, 62 Mo. App. 394.

The case of *Phillips v. Overfield*, 100 Mo. 466, belongs to a different class. There it appeared that, in the year 1863, Amos R. Phillips was appointed administrator of the estate of Shapley R. Phillips. The administration continued until the death of the administrator in 1873. During the ten years, Amos R. carried on an extensive business. He died owing the estate large sums of money and other debts amounting to about $60,000, and his estate was insolvent, and the sureties on his official bond were also insolvent. The suit was brought by the heirs of the estate for the purpose of making their claims a first charge on the assets of the estate. The only evidence relied on was that, at the commencement of the administration, Amos R. had but little property. The supreme court held this showing to be too indefinite, and observed that it was "just as fair to say that the property which he owned at his death is the product of money and property received from the defendant creditors, as it is to say it is the product of the assets of his father's estate."

It appeared from the evidence that S. H. Merten and John F. Hackmann were members of the plaintiff's

board of directors. Another director admitted that he knew that Hackmann was conducting the business in the manner stated. One of the witnesses also stated that all of the plaintiff's officers knew of it. This, however, the other directors denied. Under this evidence the defendant insists that the relation of depositor and depositary, or of creditor and debtor, was established between the plaintiff and the milling company, which, of itself, is sufficient to defeat this action. Conceding that the entire board knew of the misappropriation, the contention involves the proposition that the board of directors of a corporation may condone or ratify the wrongful conversion of money by one of its officers, or that such officer with the consent or connivance of the board may disregard a by-law of the corporation. It is settled that neither can be done short of the unanimous consent of the shareholders. 1 Morawetz on Private Corporations, sec. 499; *Hazard v. Durant*, 11 R. I. 196.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered. All concur, Judge ROMBAUER in the result.