IN RE ASSIGNMENT of SCHWARTZ BROS. COMMISSION COMPANY, GUS WITTICH et al., Respondents, v. J. H. ZUMBAULEN, Assignee, Appellant.

St. Louis Court of Appeals, November 20, 1900.

1. **Assignments: TRUST: CESTUI QUE TRUST: ASSETS: BANKRUPT: CONVERSION.** In case of assignments, whenever money or property has been held in trust and has been wrongfully converted by the bankrupt and the conversion takes place under circumstances that justify the inference that the trust funds or the proceeds of the trust property have gone into and swelled the assigned assets, a court of equity is justified in declaring a preference in favor of the *cestui que trust* against the general assets of the estate.

2. ———: ———. In the case at bar the natural inferences to be drawn from the conceded facts are, that the wheat was sold by the commission company and the proceeds of the sale used in paying the debts of the concern, thereby increasing the value of the assigned estate.

3. ———: ———: **EQUITABLE RIGHT.** In the case at bar, the equitable right of the respondents to impress the general assets of the concern with the trust remained open to them because they could do so without stultifying themselves and without prejudicing the rights of other creditors.

In re Assignment v. Zumbaulen.

Appeal from the St. Louis City Circuit Court.—*Hon. William Zachritz*, Judge.

AFFIRMED.

*Clinton Rowell* and *John H. Douglass, Jr.* for appellant.

(1)   There is no evidence that the trust property, or its proceeds, was ever mingled with the assets of the commission company, or swelled the assets of the assigned estate, and the motion should, therefore, have been overruled. Smith v. Harrison, 83 Mo. 210; Evangelical Synod v. Schoeneich, 143 Mo. 656; Deming Co. v. Webb, 76 Mo. App. 329. (2)   The presentation of the claim to the assignee as an ordinary debt and its allowance as such, constitute a bar to the present proceeding.   Stoller v. Coates, 88 Mo. 514; Evangelical Synod v. Schoeneich, 143 Mo. 656; Johnson-Brinkman Co. v. Bank, 126 Mo. 349; Nanson v. Jacob, 93 Mo. 331; Boiler Works v. Haydock, 59 Mo. App. 653; 27 Am. and Eng. Ency. of Law (1 Ed.), p. 261.

*Lange & Senn* for respondents.

(1) There was evidence that the trust property, or its proceeds, increased the assigned assets.   National Bank v. Sanford, 62 Mo. App. 397; Harrison v. Smith, 83 Mo. 217. (2)   The respondents are not estopped to maintain the present proceedings.   Building Ass'n v. Zoll, 83 Mo. 99; Deming v. Webb, 76 Mo. App. 334; Nanson v. Jacob, 93 Mo. 338; Johnson v. Bank, 116 Mo. 574.

BIGGS, J.—On the first day of March, 1897, the Schwartz Bros. Commission Company, hereinafter desig-

nated as the commission company, made an assignment for the benefit of its creditors. J. H. Zumbaulen was named as assignee. Gus and Albert Wittich, the petitioners and respondents herein, had theretofore, to-wit,. during the years 1895 and 1896, delivered to the commission company for storage, thirteen hundred and eighty-six bushels of wheat. This wheat had been disposed of at the time of the assignment and had not been accounted for by the commission. company. In the present proceeding the petitioners seek to have a preference declared against certain funds in the hands of the assignee for the value of the wheat, the contention being that the commission company held the wheat as bailee, and had unlawfully converted it, thereby increasing the assigned assets. The assignee admitted the receipt of the wheat and that the commisson company had possession of it on February 28, 1897, which was the day before the assignment was executed. There was no direct proof of the disposition of the wheat or of its proceeds, and the company had only a few dollars cash when the assignment was made. The main defense was that before the institution of the suit the petitioners had presented their claim to the assignee and that it had been allowed as an ordinary demand for the sum of eight hundred and fifty-five dollars and thirty-seven cents, this amount being the market value of the wheat in question at the time of the assignment, less storage charges and advances. Upon this proof the circuit court entered a decree giving the preference as prayed and ordering the assignee to pay the claim out of the funds in his hands. From that decree the assignee has prosecuted this appeal.

1. Unless the respondents are estopped by their previous voluntary proceedings before the assignee to claim a preference, we think it very clear under the adjudications in this state that they are entitled to an affirmance of the

judgment.   In cases of assignments whenever money or
property has been held in trust and has been wrongfully con-
verted by the bankrupt and the conversion takes place
under circumstances that justify the inference that the trust
funds or the proceeds of the trust property have gone into
and swelled the assigned assets, a court of equity is justified
in declaring a preference in favor of the *ceslui que trust*
against the general assets of the estate.   Harrison v. Smith,
83 Mo. 210; Stoller v. Coates, 88 Mo. 515; Bank v. Sanford,
62 Mo. App. 394; Brick Company v. Schoeneich, 65 Mo. App.
283; Evangelical Synod, etc., v. Schoeneich, 143 Mo. 652;
Ulrici v. Boeckler, 72 Mo. App. 661.   It is conceded that on
the day before the assignment was made the wheat in question
was in possession of the commission company, and that at the
time of the assignment it had been disposed of in some way.
As there is no postive proof of a sale or other disposition of
the wheat, and as the inventory of the assigned assets showed
but a small amount of cash, counsel for appellant contend
that there is no legal justification for the inference that the
wheat was converted or sold by the commission company
and the proceeds mingled with the assigned assets of the con-
cern.   The argument is that the wheat might have been
destroyed in some way, or that it was given away by the
company.   It is possible that the wheat was destroyed or that
the commission company gave it away, but it is not probable.
The law does not deal in possibilities.   The natural infer-
ences to be drawn from the conceded facts are, that the
wheat was sold by the commission company and the proceeds
of the sale used in paying the debts of the concern, thereby
increasing the value of the assigned estate.

2.   If the position of respondents in respect of the al-
lowance of the claim is necessarily inconsistent with that now
assumed by them, they are estopped to claim a preference,

for the reason that the law will not permit a person to urge inconsistent theories concerning the same subject-matter in litigation.   Or, stating the principle in another connection, if a litigant chooses one of two inconsistent remedies he is conclusively bound by the choice.   To procure a preference the respondents now assert that the wheat was deposited with the commission company for storage, and that on the day before the assignment it wrongfully converted the wheat, thereby creating a demand in favor of the respondents for its value, which they claim should be paid by the assignee in preference to ordinary debts.   The paper as originally presented to the assignee and upon which the allowance was made, stated that the commission company was debtor to the respondents for the value of thirteen hundred and eighty-six bushels of "No. 2 red wheat *delivered for storage.*"   Then follows a tabulated statement of the dates and amounts of the various deposits of wheat, the total number of bushels, and the estimated value at the date of the assignment, the amounts due for storage, the amount of advances made on the deposits by the commission company, and the balance claimed to be due, to-wit, $855.37.   All of this corresponds with the contention now made, and we are unable to perceive wherein respondents have assumed inconsistent positions respecting their claim for damages.   As to its controlling facts, the case we have here is totally unlike that of Stoller v. Coates, 88 Mo. 514, upon which appellant relies. There Stoller deposited a sum of money in the Mastin Bank, with instructions to advise the Exchange Bank of Denver that the deposit would be passed to its credit for the use of one Earnest, who was the real owner of the fund, it being the the proceeds of a shipment of cattle belonging to Earnest and consigned for sale to Stoller.   Before advices of the transaction were received by the Exchange Bank the Mastin

Bank made an assignment, and thereupon the Exchange Bank refused to enter the transaction or to give Earnest credit for the amount of the deposit. Afterwards the plaintiff presented a demand for allowance to the assignee of the Mastin Bank in favor of the Exchange Bank to the use of Earnest. As the books of the bank showed the transaction in that way the assignee allowed the demand. Afterwards Stoller was compelled to pay the amount to Earnest, and he thereupon instituted his equitable action to have a preference declared in his favor. In order to sustain his claim he charged an unlawful conversion of the fund by the Mastin Bank, in that it was a special deposit and that the cashier of the bank wrongfully mingled it with the assigned assets. Commissioner Martin very properly decided that this position was inconsistent with that previously assumed by Stoller when he procured the allowance. He said: "The present suit proceeds upon the theory that the debt arising from the credit was never affected by reason of the Exchange Bank's refusal to accept it in place of money, and that consequently the fund was unlawfully converted to the use of the bank. After having resurrected the repudiated credit, and established it as a true demand against the general assets of the bank, which has been realized by plaintiffs to the extent of the assets distributable thereon, they are clearly barred from prosecuting their present claim for the specific fund. The bank is certainly not liable on both claims. Yet such would be the result if the plaintiffs were allowed to maintain their present suit. They stand in a court of equity which will look at the substance and truth of the previous proceedings before the assignee. It can not fail to notice that the Exchange Bank had nothng to do with them and that they were conducted at the instance of plaintiffs, who have received the proceeds thereof. They will not be per-

mitted to occupy inconsistent and contradictory relations to the estate they are pursuing. Having received their *pro rata* share of the general assets of the bank, including the disputed deposit, upon their claim as a simple debt against the bank, they can not be permitted to impeach the fact upon which they succeeded, and maintain that the bank was not a debtor for the money so deposited, but only a special trustee thereof, and that the fund delivered to it, or its equivalent, must be returned from the assets of the bank, as in case of an unlawful conversion. The allowance of their claim as a debt against the general assets of the bank ratified and confirmed the original credit for the deposit as it appeared on the books of the bank, and constitutes a negation of their present claim in equity for conversion of a specific fund." The grounds of the estoppel in that case are made obvious by the foregoing extract. On the one hand the allowance rested on a debt of the bank to Earnest and evidenced by a credit on its books in his favor, and the preference was subsequently urged on the ground that the bank was not a debtor for the amount deposited but a special trustee thereof. Counsel in the case at bar can find no support for their contention in Judge Martin's opinion, but on the contrary it demonstrates its untenability. The account of the respondents as presented and allowed showed inferentially at least a bailment and the violation of the trust by a wrongful conversion of the wheat. This showed the equitable character of the claim, and it can not be said that the nature of the demand was lost or merged in the judgment of allowance. The idea of merger was not advanced by the supreme court in the Stoller case, but the entire discussion was directed to the question of estoppel. That was the pivotal question. We therefore conclude that the equitable right of the respondents to impress the general assets of the concern with the trust remained open to them

because they could do so without stultifying themselves and without prejudicing the just rights of other creditors.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. All concur.