ROBERT L. LEACH, State Superintendent of Banking (L. A. ANDREW, Successor), Appellee, v. CITY-COMMERCIAL SAVINGS BANK OF MASON CITY, Appellee, et al., Appellants.

**BANKS AND BANKING:** Insolvency—Preference—Draft Remittance —Effect. Trust funds in a bank lose their trust character and become general assets of the bank when the bank, under authority from the owner of the trust funds, remits to the owner its draft against existing funds, for the amount of the trust funds. The loss of said trust character necessarily precludes any claim of preference in case of the subsequent insolvency of the drawer bank.

Headnote 1: 7 C. J. p. 752 (Anno.)

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

MARCH 15, 1927.

Claimants seek to establish against the receiver of an insolvent bank a claim, as preferred. The opinion states the facts. The trial court denied the preference, and classified the claim as that of a depositor. Claimants appeal.—*Affirmed.*

*Senneff, Bliss, Witwer & Senneff*, for appellants.

*John Fletcher,* Attorney-general, and *Blythe, Markley, Rule & Clough,* for appellee.

DE GRAFF, J.—The facts are not in dispute, and briefly stated are as follows: The claimants, Lucy D. and Emmet A. Greene, wife and husband, formerly lived at Mason City, Iowa, but removed to Los Angeles, California, in 1920. Prior to changing their domicile, they sold to one Porter, under written contract, their residence property in Mason City, and left their executed deed in escrow with the City National Bank of Mason City, to be delivered to Porter upon his making the deferred payments. Thereafter, the City National Bank and the Commercial Savings Bank were consolidated, and as a result, the defendant, City-Commercial Savings Bank of Mason City, came into being. The deed in escrow was thereupon transferred to the defendant-bank.

Porter sold his contract to one Walter C. Thompson, and on April 14, 1925, the vice president of the defendant-bank wrote Mrs. Lucy D. Greene that Porter had requested the vendors to execute a deed direct to Thompson, as Thompson contemplated paying at once the balance of the consideration; and that, as soon as the deal was closed, the money would be available to claimants. In fact, the bank inclosed a new deed for signature, and returned the escrow deed. On April 20, 1925, the claimants, in answer to this letter, wrote to the defendant-bank and inclosed a duly executed deed to Thompson, together with abstract of title, and requested that the abstract should be continued to date, that the expense thereof should be deducted from the amount due, and that the bank should send a draft to claimants for the amount due. At that time there was a small balance in Mrs. Greene's checking account in said bank, which the defendant was authorized to use in payment of the expense incident to the continuation of the abstract. This letter was registered, and was received by the defendant on April 27, 1925.

On May 2, 1925, Thompson paid the balance of the purchase price to the defendant-bank. The sum of $4,155.97 was deposited to the credit of the claimant Mrs. Greene.

On May 2, 1925, the vice president of the defendant-bank wrote a letter to the claimants, addressed to Los Angeles, stating that the Porter transaction had been consummated, and

that the bank was inclosing a draft and a statement showing receipt of $4,155.97 and a balance in her old checking account with the bank of $2.41, from which amounts was deducted the sum of $17, covering her items of expense.

The draft was drawn on the National Bank of Republic of Chicago, and bore date May 5, 1925, on which date the letter, with inclosures, was mailed to the claimant. This letter was received on May 9, 1925, which was the last day on which the defendant-bank was open as a going concern. The claimants at once sent this draft for collection, but it never found clearance, for the reason that the drawer-bank had been closed prior to the presentment of the draft for payment, and a receiver appointed.

There is no showing in the record that, at the time of the issuing of the draft by the drawer-bank, the bank was insolvent or known to be insolvent by its officers personally conducting the transaction. The bank did commingle the money received with its own funds, giving credit to claimants on the books of the bank for the amount so received. Impliedly at least, the bank had the right to act in this manner, as it had been given by claimants specific direction and authority to remit by draft. The drawee-bank did have money on deposit belonging to the drawer-bank, in excess of the draft issued, but the amount of bills payable owed to the drawee by the drawer is not shown. The rule that the delivery of a check or draft is a representation that it is good, and would be paid on presentation, is not applicable under the facts under consideration. See *Mulroney Mfg. Co. v. Weeks*, 185 Iowa 714; *State v. Foxton*, 166 Iowa 181.

The instant case does not stand as if the drawer-bank did not have any funds in the Chicago bank, and it may be conceded that a "settlement, as for a collection made, is not accomplished by forwarding a draft, which, on being presented for payment within a reasonable time, as was this, is repudiated for want of funds." *Brown v. Sheldon St. Bank*, 139 Iowa 83, 91.

The instant bank did not select the manner of remittance. Had it, on its own initiative, attempted to settle by draft, instead of cash, a different question would confront us. The situation, therefore, involves no fraud, whereby it may be said that a trust fund resulted from the act of the bank, thereby

granting to claimants the right to have equitable relief to reclaim, if it be conceded that the fund can be sufficiently traced to and identified in some other existing fund or property, to the augmentation of the assets in the hands of the receiver.

It is apparent from the record facts that, in the first instance, the defendant-bank was the agent of the claimant, and at that time a fiduciary relationship existed. The instruction given by the claimants to the defendant-bank terminated that agency. It may not be disputed that there was a specific direction to remit by draft. The bank was authorized to use the identical money collected, and substitute its own obligation in its stead. One who purchases a draft of a bank, paying therefor in currency, purchases the credit of the bank, and under such circumstances the relation of debtor and creditor arises. This legal principle is quite universally recognized. It is the Iowa rule. *Leach v. Battle Creek Sav. Bank*, 203 Iowa ——; *Leach v. Iowa St. Sav. Bank of Manning*, 202 Iowa 894; *Leach v. Battle Creek Sav. Bank (Alexander, Intervener)*, 202 Iowa 875; *Leach v. Exchange St. Bank of Stuart*, 203 Iowa ——.

Furthermore, the draft *per se* did not operate as an assignment. *Leach v. Mechanics Sav. Bank*, 202 Iowa 899.

The decisions herein cited are controlling in the instant matter. The decree entered by the trial court must be, and is, —*Affirmed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.