Robert L. Leach, State Superintendent of Banking, et al., Appellees, v. Farmers & Merchants State Bank of Washington, Appellee; American Commercial & Savings Bank of Davenport, Intervener, Appellant.

**BILLS AND NOTES:**   Payment—Acts Constituting.   The act of a bank (1) in receiving, without authority, payment of its customer's notes at a time when said bank had either rediscounted or collaterally pledged *and indorsed* said notes to another bank, and (2) in forwarding to the then holder a draft and other remittances sufficient to cover the amount of the notes, and the act of the then holder (1) in accepting the remittances, (2) in marking the notes ''paid,'' and (3) in returning them, work a complete payment of the notes, even though the draft was not paid, owing to the failure of the drawer bank, it appearing that, at the time of each transaction, both parties had entered the proper debits and credits on their mutual accounts in harmony with the theory of payment.   No right of preference was created by reason of the issuance or nonpayment of the draft.

Headnote 1:   7 C. J. pp. 615 (Anno.), 627 (Anno.), 748 (Anno.), 751.

*Appeal from Washington District Court.*—H. F. Wagner, Judge.

October 18, 1927.

The American Commercial & Savings Bank of Davenport, Iowa, filed in the receivership proceedings against the Farmers & Merchants State Bank of Washington, Iowa, a claim for a preference.   Preference was denied, and claimant appeals.—*Affirmed.*

*Lane & Waterman* and *W. M. Keeley,* for appellant.

*Edmund D. Morrison,* for appellees.

Morling, J.—The claim for preference is based upon the payment by K. A. Mathers to the Washington bank of two notes

made payable to the Washington bank, but held at the time of payment by the Davenport bank. The notes were for $1,100 and $750, respectively, and were paid by Mathers to the Washington bank, April 26, 1924. At the time of making the payment, Mathers was told that the notes were in Davenport. The Washington bank was then keeping a very active account with the Davenport bank. The Mathers payments were credited by the Washington bank to that account. The books of the Washington bank showed the balance due to it from the Davenport bank at the close of business April 25, 1924, to be $967.15. The books of the Davenport bank showed the balance April 25, 1924, to be $420.86. On April 26th, the Washington bank wrote to the Davenport bank the following letter:

"Will you kindly charge to our account and return to us the $1,100.00 note of K. A. Mathers held by you as a rediscount.

"Also kindly charge to our account the $750 note of Mr. Mathers, held by you as collateral, giving us credit on our Bills Payable for like amount and charging the accrued interest on the rediscounted note to our account."

On the same date, the Washington bank drew on its Chicago correspondent, with whom it had a sufficient balance, a draft for $1,500, payable to the Davenport bank, and charged it to its account with the Davenport bank. The Washington bank sent the $1,500 draft to the Davenport bank, with letter of remittance, stating:

"Enclosed please find for collection and credit remittance items enumerated below. * * * Drawn on 2-5. Amount $1,500."

This remittance and the letter mentioned were received by the Davenport bank April 28, 1924. On that date, the Davenport bank wrote to the Washington bank:

"As per instructions contained in your favor of the 26th instant, we are today charging your account $1,107.34 in payment of K. A. Mathers note for $1,100.00, which note we are enclosing to you.

"We are also charging your account $750.00 crediting this amount on your Bills Payable of December 5th. This is in payment of a note of $750.00 of Mr. Mathers, which we held as collateral to your Bills Payable. This note we are also enclosing."

The two notes were accordingly stamped "paid" (admit-

tedly, in argument, before they were returned to the Washington bank), charged to the Washington bank, and transmitted. The $1,500 draft was credited by the Davenport bank in the same account to the Washington bank. The Washington bank closed on the afternoon of April 28, 1924. On April 29, 1924, the draft was presented to the drawee in Chicago, and payment refused because of the closure. The balance owed to the Washington bank by the Davenport bank, according to the books of the latter, on April 28, 1924, after charging the Mathers notes and crediting the draft for $1,500, was $85.83. On May 1st, the draft and protest fees were charged back in this account, leaving, according to it, an overdraft of $1,416.48. The cashier of the Davenport bank testified that claimant had rediscounted the Mathers notes for the Washington bank, and had never authorized that bank to collect them; that he would not have authorized the return of the Mathers notes if the account, including the remittance of $1,500, had not been sufficient to take care of them. The officers of the two banks gave contradictory and self-contradictory testimony as to their purposes in adopting this method of transacting the business in question, which we find it unnecessary to discuss, as the legal effect of their acts is to be determined by what they did and expressed,—not by their undisclosed intentions. *Valentine v. Andrew*, 203 Iowa 463.

Claimant urges that the Washington bank was never authorized by it to collect the Mathers notes, and at the same time seeks to base a trust in part upon the assumption that an agency existed. We must be governed by the evidence that there was no agency. The business under consideration was done by correspondence, and no agency is assumed therein to exist. The Mathers notes were indorsed by the Washington bank to the order of the Davenport bank. Apparently the Washington bank was liable to the Davenport bank for their payment. The letter of the Davenport bank is plain that that bank was charging the account of the Washington bank the two amounts "in payment" of the Mathers notes. There is no evidence that the Davenport bank knew of the payment by Mathers to the Washington bank. The Davenport bank accepted the Chicago draft, gave the Washington bank credit for it, charged the account with the notes, marked them "paid," and surrendered them. It accepted the form of remittance, together with the credit balance on its books,

as payment by the Washington bank. Claimant urges that the draft was received only as conditional payment of the notes. Its argument assumes that the notes are not paid, and that claimant's right is to recover upon them as unpaid. The insolvent's liability would be upon the indorsement. Such claim is not one entitled to preference.

No fraud or mistake or rescission or ground for rescission is pleaded or proved. On the facts before us, the Davenport bank became the owner of the draft, and the liability of the Washington bank is upon the draft, or upon the overdrawn account. No relationship of principal and agent, or of trustee and *cestui que trust,* express or implied, between the two banks is shown. If the Davenport bank had previously authorized the remittance of the draft in payment of the notes, it would have been merely the purchaser of the credit represented by the draft. The draft was tendered in payment, and was accepted, and the absence of previous authority to remit in that method is immaterial. The case is within the principle of *Valentine v. Andrew,* 203 Iowa 463; *Leach v. Iowa State Sav. Bank of Sioux City,* 204 Iowa 497; *Leach v. City-Commercial Sav. Bank,* 203 Iowa 398, and cases there cited. The claimant bases its case in part on the claimed existence of a trust relationship between Mathers and the Washington bank. Although the Washington bank received from Mathers his money in trust for the payment of his notes, and though we assume that claimant is entitled to take advantage of breach of such trust, the most that Mathers could claim would be that his notes were to be paid, and he was to be discharged from his obligations upon them. It would be immaterial to him that the identical funds paid in by him were not used in the payment. As has been noted, no fraud, mistake, or rescission is claimed. On the facts before us, the notes have been paid, and Mathers has been discharged.—*Affirmed.*

EVANS, C. J., and STEVENS, DE GRAFF, and ALBERT, JJ., concur.

WAGNER, J., not participating.