JOSEPH J. WINKLER AND ANOTHER v. A. J. VEIGEL, LIQUIDATING FARMERS STATE BANK OF HOLDINGFORD.[1]

February 8, 1929.

No. 27,072.

---

[1]Reported in 223 N. W. 622.

D. F. Nordstrom, for appellant.

Frederick J. Miller, for respondents.

Henry Spindler, amicus curiae, filed a brief in support of the contention of respondents.

HOLT, J.

In overruling a demurrer to the complaint the court certified the questions presented important and doubtful. Defendant appeals. The substantial facts stated in the complaint are these:

The Farmers State Bank of Holdingford is in the hands of defendant for liquidation. While it was a going concern plaintiffs paid to the bank as their agent $253.23 to be remitted to the county treasurer at St. Cloud for payment of taxes for 1926 upon certain real estate owned by them in Stearns county and received from the cashier of the bank a receipt so stating. The sum so receipted for was paid to the bank in this manner: Plaintiffs had a checking account in the bank and gave the cashier their check in the amount stated, and the bank at once reduced said account in the amount of the check. Three or four days thereafter, on May 31, 1927, the bank sent a draft to the county treasurer of Stearns county, together with a list of the names and descriptions upon which payment of taxes were to be made. This draft included the amount of plaintiffs' taxes and of others who had intrusted the bank with funds to be remitted in payment of the taxes on their lands. This draft reached the county treasurer; but before he could present it to the bank upon which it was drawn, defendant closed the doors of the Farmers State Bank of Holdingford and the draft was not

paid, nor did the treasurer issue any receipt for the taxes. When defendant took over the bank he received funds more than enough to cover the draft. Plaintiffs presented their claim to defendant demanding that it be allowed as a preferred claim. This defendant refused to do but allowed it as a general claim. Plaintiffs in the complaint prayed that the court adjudge their claim a preferred claim. Two other taxpayers who had paid to the bank at the same time moneys to be remitted in payment of their taxes assigned their claims for preference to plaintiffs. These are stated in two separate causes of action in substantially the same words as above, except that one of the amounts was paid in cash, and the other was paid by a check upon another bank in Holdingford, which check was presented and the money paid thereon to the Farmers State Bank of Holdingford.

Nothing need be said of the second and third causes of action, for if the complaint states facts showing plaintiffs entitled to a preference upon the first cause of action, it certainly does as to the other two.

The initial question presented is whether the giving of the check by plaintiffs upon their deposit account in the bank, and the bank's charging the amount of the check against the account, amounts to the same thing as a payment of that much cash to the bank for the special purpose of remitting the same to the county treasurer. We think it does. A well reasoned decision so holding and also affirming the next proposition, that a reduction of the deposit account of the maker of the check by the transaction augments the assets of the bank, is Northwest Lbr. Co. v. Scandinavian Am. Bank, 130 Wash. 33, 225 P. 825, 39 A. L. R. 922. To the same effect may be cited Darragh Co. v. Goodman, 124 Ark. 532, 187 S. W. 673; Messenger v. Carroll Tr. & Sav. Bank, 193 Iowa, 608, 187 N. W. 545; Goodyear T. & R. Co. v. Hanover State Bank, 109 Kan. 772, 204 P. 992, 21 A. L. R. 677; Brogan v. Kriepe, 116 Kan. 506, 227 P. 261, 37 A. L. R. 126; Stoller v. Coates, 88 Mo. 514; Hawaiian Pineapple Co. v. Browne, 69 Mont. 140, 220 P. 1114; People v. City Bank of Rochester, 96 N. Y. 32; State ex rel. v. Excello F. M. Co. 131 Okl.

100, 267 P. 833; Federal Res. Bank v. Peters, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742.

Holding, as we do, that the acceptance of plaintiffs' check and charging the amount thereof against their deposit account was equivalent to a receipt of that much money, our own decisions determine that the agreement of the bank to remit that amount to the county treasurer in payment of the taxes on plaintiffs' land constituted the fund a special deposit held by the bank as trustee or agent for plaintiffs entitling them to a preference when the bank became insolvent before the money reached the county treasurer. In Blummer v. Scandinavian Am. State Bank, 169 Minn. 89, 90, 210 N. W. 865, it was said of a special deposit, here applicable:

"The bank could use it for that purpose only. Indeed, the bank was holding this fund in trust. Dun. Dig. § 9916; Midland Nat. Bank v. Hendrickson, 165 Minn. 446, 206 N. W. 723. The money having been received for the particular purpose the relation of debtor and creditor did not exist but rather that of trustee and cestui que trust. The bank had no title to the money. Its obligation was defined by the terms of the agreement. It was a special deposit. The fact that the money was mingled with other funds is not controlling. He is a preferred creditor. Plaintiff must have his property or its equivalent." There follows a long list of authorities supporting the law stated.

We think also that Blythe v. Kujawa, 175 Minn. 88, 220 N. W. 168, supports the contention that the funds or assets of the bank which came into defendant's hands were augmented to the amount of the check—the proceeds of the check being retained by the bank. There is no question upon the allegations of the complaint but that defendant took over more funds than the amount of the draft sent to the county treasurer. So enough of the trust fund is traced into the hands of defendant. And under the decision last cited and the one of Eastman v. Farmers State Bank of Olivia, 175 Minn. 336, 221 N. W. 236, if the trust fund is commingled with the general funds of the bank and there are enough assets when the insolvency takes place, regardless of the state of the bank's cash between the

time the special deposit or trust fund was received and the time of insolvency, a preference will be given the owner of the special deposit. We are aware that this conclusion is at variance with the decisions of many courts of high standing, but we think it accords with the trend of our decisions. In 13 Minn. Law Rev. p. 39 (December, 1928) is a quite full note citing authorities pro and con on the subject of tracing trust funds in insolvent banks.

Appellant relies on Standard Oil Co. v. Veigel, 174 Minn. 500, 219 N. W. 863. But there it clearly appears that the plaintiff purchased a draft from the bank, thereby creating the relation of debtor and creditor. The transaction in Milne v. Capital Tr. & Sav. Bank, 170 Minn. 66, 211 N. W. 954, was held to create the same relation. In Hjelle v. Veigel, 169 Minn. 173, 210 N. W. 891, the deposit was found to be general.

The cases cited from Iowa, such as Leach v. Plymouth County Sav. Bank (Iowa), 212 N. W. 310; Andrew v. Citizens State Bank, 203 Iowa, 343, 212 N. W. 744; Leach v. City-Commercial Sav. Bank, 203 Iowa, 398, 212 N. W. 746, also involved purchase of drafts and come within the same class of cases as Standard Oil Co. v. Veigel, 174 Minn. 500, 219 N. W. 863.

In Miller v. Viola State Bank, 121 Kan. 193, 246 P. 517, 48 A. L. R. 373, also cited, the court held that there was no augmentation of the bank's assets where the plaintiff's checks had been used by the bank to buy bonds for him. The bonds had been bought by the bank as directed, but instead of holding them for safe-keeping an officer of the bank stole and converted the same. It is plain that the assets of the bank were not increased by the bonds or any proceeds therefrom.

The order is affirmed.