## FIRST NATIONAL BANK OF MILACA v. ELMER A. BENSON AND ANOTHER.[1]

June 15, 1934.

No. 29,992.

[1]Reported in 255 N. W. 482.

*Frederick J. Miller, Leonard L. Sumner,* and *Thomas E. Latimer,* for appellants.

*Junell, Driscoll, Fletcher, Dorsey & Barker, Kenneth M. Owen,* and *Donald West,* for respondent.

*JULIUS J. OLSON, Justice.*

Defendants have appealed from a judgment establishing plaintiff's preference claim against the defendant bank, an insolvent institution in the hands of the commissioner of banks for liquidation.

The facts are simple and may be summarized as follows: The two banks involved in, this action were the only banks at Milaca during the time here involved. It was their custom at the close of banking hours on each day for an officer from each bank to meet together for the purpose of exchanging items; that is to say, plaintiff bank would bring all checks by it cashed during the day and drawn upon the defendant bank, the defendant bank doing likewise. Footings would then be made by each and a balance struck. Whichever bank had the lesser amount would then settle the matter by paying cash or executing a draft for such difference. The trial court found:

"That this method of paying balances [i. e. issuing drafts] between the said banks was adopted solely because of the serious inconvenience, expense and risk incident to having on hand sufficient cash to pay said daily balance."

The court also found that on the day in question, July 27, 1932, defendant issued to plaintiff, after the balance to it had been arrived at, the usual draft for such balance; "that said draft was not taken by plaintiff for the purpose or with the intention of purchasing the credit of either the drawer or drawee of said draft in so far as the same covered and represented the total amount of said 22 checks, * * * but the same * * * was taken by plaintiff conditional upon its being paid in full upon due presentation to said drawee."

On the next day, July 28, the defendant bank was taken over by the commissioner of banks for liquidation. That same morning the

draft issued to plaintiff. was duly presented to the drawee for payment, but payment was refused solely because the drawer bank had closed. There were ample funds in the drawee bank due to the drawer with which to meet the draft. Plaintiff duly demanded, on the same day, that the checks delivered the day before be returned to it, but the deputies in charge of the bank, under the authority and direction of the commissioner of banks, refused so to do. They proceeded to enter up the checks as debits against the various accounts of the drawers thereof, each and all of them being adequate with which to meet and discharge the same. The commissioner had on hand, and has at all times since possessed, sufficient funds to meet and pay plaintiff's preferred claim as allowed by the court.

On November 25, 1932, plaintiff duly filed with the commissioner a properly verified statement of claim asking to have the same allowed as a preferred claim. The commissioner disallowed the same as to preference but allowed it as a general claim on December 8, 1932. This action followed.

In addition to the findings above mentioned, the court also found, and defendants concede that there is justification for the finding, that at the time this transaction took place defendant was in fact insolvent but that the officers thereof did not know that such was the fact. As conclusions of law the court determined that the amount of the checks here involved constituted a trust fund for the benefit of the plaintiff and that no part of the assets of the defendant bank should be permitted to go to general creditors until this claim was paid. There were other checks involved which had been cashed by plaintiff, 12 in all, as to which the court allowed only a general claim. No appeal has been taken from that part of the judgment; hence it need be mentioned only. The amount involved as to these items is not here for review.

Defendants present various assignments of error, which may be grouped into two parts: (1) That the court erred in refusing to find "that plaintiff, as collecting agent for the depositors, accepted the draft in payment of said 22 checks," and, further, "that there is no trust relationship of any kind between plaintiff First National

Bank of Milaca and defendant Security State Bank of Milaca which gives the former any preferred claim against the latter." (2) That the court erred in refusing to make the conclusion of law read as requested by defendants, viz.:

"That the plaintiff has a general claim for the amount of its draft and is not entitled to a preference, and that this action be dismissed and the defendants have their costs and disbursements."

It is true, as claimed by defendants, that as a general rule equity favors the ratable distribution of assets of insolvent corporations to the end that all creditors may be treated alike. "He who claims a departure from this rule must establish his right clearly." Citizens Bank v. Bradley, 136 S. C. 511, 515, 134 S. E. 510. So the inquiry here must necessarily be directed to that particular phase of the case.

The facts hereinbefore recited clearly indicate that the sum represented by the draft, in so far as the 22 checks here involved are concerned, was available to plaintiff on the day that the draft was issued and accepted. That money was in the hands of the defendant bank and should have been transferred in cash that day. Instead of so doing and as a matter of custom and convenience only, the draft was executed and delivered. Both parties intended that the draft should take the place of the cash and that it was not to operate as payment until actually paid. That fact having been established, and the evidence amply supports such finding, there can be no doubt that under our holdings a trust relationship arose and that the trial court reached the proper conclusion.

Directly in point is the case of Bank of Republic v. Republic State Bank, 328 Mo. 848, 849, 42 S. W. (2d) 27. The syllabus, as far as here in point (and the decision fully sustains the same) reads:

"Plaintiff bank and the defendant bank were located on opposite sides of the street. It was their daily custom to clear, or exchange direct, checks and other items which each had cashed or otherwise acquired for collection, drawn against the other, and for the one which had the lesser total to give a draft to the other for the bal-

ance due on the day's clearings. In the clearances on a certain day, a balance was due plaintiff bank, and defendant bank accordingly gave a draft for that balance drawn against its city correspondent. The items presented for clearance by plaintiff bank, and paid in part by the draft, were all checks on defendant bank, and the drawer of each check had a balance to his credit in defendant bank sufficient to pay the check, and the checks were charged later in the day by defendant bank against the accounts on which they were drawn. When defendant bank closed its doors at the end of the day it had in its vaults and in solvent correspondent banks, particularly in the drawee bank, more than enough money to pay the draft, but the draft was not paid when it reached the drawee bank the next day, because the drawer, the defendant bank, in the meantime had closed and ceased to do business. It is 'not claimed that the officers of the defendant bank knew it was insolvent when they issued the draft. *Held,* that the items presented by the plaintiff bank were items it held for collection, and it acted as agent in presenting them to the defendant bank, and in accepting the draft from defendant bank did so only conditionally, and is therefore entitled to a preferred claim for the amount of the draft."

In Winkler v. Veigel, 176 Minn. 384, 223 N. W. 622, plaintiffs went to the defendant bank and gave it their check drawn upon their own account, instructing the bank to remit the money to the county treasurer in payment of their taxes. A few days later the bank sent to the county treasurer a draft covering plaintiffs' taxes and also the taxes of other customers of the bank. The bank failed before the draft was cashed. It was there held that the execution and delivery of plaintiffs' check and charging the same to their account constituted an augmentation of the assets of the bank and the creation of a special deposit so as to entitle them to a preference. In principle the transaction here cannot be distinguished. The case goes into and discusses fully and ably the various authorities *pro* and *con.* A definite stand was then taken, and we do not doubt the accuracy of that decision.

When the individual accounts of the various depositors were charged with the respective checks here involved, there was in fact

an augmentation of assets of defendant bank as much so as in the case cited. To the same effect are Bauck v. First State Bank, 178 Minn. 64, 225 N. W. 916, and Blythe v. Kujawa, 175 Minn. 88, 220 N. W. 168, 60 A. L. R. 330.

In 7 C. J. p. 608, § 265, it is said:

"When a check is remitted to the drawee for collection, this is not a payment of the debt, but the drawee is thereby made a collecting agent for the owner of the paper in addition to its duty to the drawer to pay the same, if his deposit is sufficient."

The difficulty with defendants' position is that the facts found by the trial court clearly show that the draft issued by defendant bank was not in "payment" of the checks but was accepted by plaintiff as "conditional upon its being paid in full upon due presentation to" the drawee.

The cases of Eifel v. Veigel, 169 Minn. 281, 211 N. W. 332, and Holdingford Mill. Co. v. Hillman Farmers Co-op. Creamery, 181 Minn. 212, 231 N. W. 928, are not at variance with the other cases herein cited. Many other cases are cited by counsel for both parties, but we see no need of further discussion or citation of authorities.

Judgment affirmed.