LARS LARSON, Respondent, v. L. R. BAIRD, as Receiver of Sawyer State Bank, Sawyer, North Dakota, a Corporation, Appellant.

(236 N. W. 634.)

776

Opinion filed May 19, 1931.

*Dickinson & Johnson,* for defendant.

*Halvor L. Halvorson,* for respondent.

BURR, J. The plaintiff was the owner of ten unregistered liberty loan bonds aggregating $1,000 and on June 27, 1919 he placed the same "with the Sawyer State Bank for safe-keeping." The bank closed and one Mostad was appointed receiver. The plaintiff filed a claim showing him to be a creditor of the Sawyer State Bank for "liberty bonds left for safe-keeping with the Sawyer State Bank," in the amount of $1,000, and obtained from the receiver a certificate of proof of claim to this effect.

It is the claim of the plaintiff that the officers of the bank converted these bonds to the use of the bank; that, when he learned of this, he demanded from the receiver in charge the return of the bonds or their value; that the receiver has neglected to account to the plaintiff for the value; that the proceeds received by the bank from the sale of these bonds constituted a trust fund; that this fund is still in the hands of the receiver and so he asks the receiver be enjoined from disbursing this fund until the plaintiff be reimbursed and that the court order and adjudge that the amount of these bonds with interest at six per cent be paid by the receiver to him.

The defendant alleges: that no authority was granted to sue the receiver; that the claim filed by the plaintiff was a mere general claim of creditor to participate in the general assets of the bank; "that more than six years have elapsed since the filing of the claim in this action;" and that this action is barred by the statute of limitations and especially by the provisions of chapter 98 of the Session Laws for the year 1927, barring claims not presented within two and a half years from the date of the mailing of the notice to present claims.

The court found for the plaintiff and judgment was entered against the receiver for $1,315.42, including interest at the rate of six per cent from July 2, 1928, decreeing that plaintiff's claim is a preferred claim, directing the receiver to pay this amount out of the fund in his hands and impressing such fund with a trust for the payment of this claim.

The defendant appeals from the judgment and the whole thereof, demands a new trial in this court and alleges the court erred in finding: that the bank had converted the bonds; that the plaintiff had demanded

the return of the bonds from the receiver; that the proceeds from the sale of the bonds constituted a trust fund; that the claim filed was a claim for the return of the bonds; that the plaintiff had received permission to sue the receiver; that there were funds now in the hands of the receiver belonging to the bank approximating $9,000, "against which fund said trust can be and in justice ought to be impressed." The errors of law specified are in harmony with these specifications as to erroneous findings.

There are five main issues to be determined—did the plaintiff have permission to sue the receiver; did the bank convert the bonds; did the plaintiff file a proper claim therefor; was this action commenced in time; are the funds in the hands of the receiver impressed with a trust for the payment of this claim?

When the bank became insolvent a receiver was appointed by the district court of Ward county and later the defendant was appointed receiver under the general law for receiver of closed banks. When the plaintiff commenced his action he applied to the district court of Ward county for permission to sue the receiver, and received permission. Under the law of this state—sections 5191b1–5191b19 of the Supplement—the appointment of the receiver and the designation of the judge to have charge of matters dealing with closed banks are vested in this court. At the time of the commencement of this action Hon. Thos. H. Pugh, district judge, had been appointed by this court and was in charge of such matters. After the commencement of the action the plaintiff applied to Judge Pugh for leave to sue the receiver and such permission was granted—the order being made nunc pro tunc. Thus when the case was tried plaintiff had permission to sue the receiver. This was sufficient permission. Leave to sue is for the purpose of preventing suits which the court or its representatives might desire to pay without the expense of suit. It is not jurisdictional and failure to obtain is an irregularity which may be cured at any stage of the proceedings. Southwestern Surety Ins. Co. v. Pacific Coast Casualty Co. 92 Wash. 654, 159 Pac. 788. See also Mulcahey v. Strauss, 151 Ill. 70, 37 N. E. 702; note in 29 A.L.R. 1460, note in 74 Am. St. Rep. 286. When the court gives permission to sue, it may grant such permission as of the time of the commencement of the action. Hirshfield v. Kalischer, 81 Hun, 606, 30 N. Y. Supp. 1027; De La Fleur v.

Barney, 45 Misc. 515, 92 N. Y. Supp. 926. The receiver is not in position to object to the act of the court that appoints him. He is the servant of the court.

The proof of conversion is conclusive. The receipt for the bonds, given by the bank to the plaintiff, gives the number of each bond. The records of the bank show these bonds, together with other securities, were placed by the bank with the American National Bank of St. Paul, Minnesota, as collateral to debts owed by the Sawyer State Bank, and the St. Paul bank sold them. When the American National Bank collected its debt and returned the remaining collateral it listed the returned collateral, and these bonds were not returned. Defendant makes no pretense of showing they were returned. Thus the bonds were taken illegally by the bank, converted to its own use and have never been returned.

The claim filed by the plaintiff is sufficient in form. He filed with the receiver of the bank a claim for bonds which he had left with the bank "for safe keeping." He did not file a claim for money due him from the bank or for a debt. He specified he had deposited bonds for safe keeping and he wants the bonds returned. They were his property and were not delivered to him. The receipt given by the receiver, and the proof of claim furnished, show the plaintiff is a creditor of the bank because of these bonds left for safe keeping,—specifying the amount. Defendant now says the amount is $950—not $1,000. The claim allowed by the receiver is for $1,000 in bonds.

The defense of the statute of limitations is not well taken. The claim was filed in time and allowed, the receivership is still in progress, none of the bonds has been returned. It is true the action was not commenced within six years after the proof of claim was filed; but no cause of action against the receiver accrues merely because of the filing of the claim. Defendant's claim that the action is barred by the statute of limitation is based upon the theory that the claim filed was a claim of a general creditor and not a claim for preference, and that the time has expired for the filing of a claim by a preferred creditor. Defendant says:

"Plaintiff at that time, and from the time of filing the general claim, until the commencement of this action, never attempted to assert any preferred claim, and no attempt has ever been made by plaintiff to file a

preferred claim. In other words, he never proposed to the Receiver of said bank, that he file an amended claim asserting that he was entitled to a preference, but he started this action in this case on the claim that is filed, and that claim is a general claim. Therefore, he cannot recover in this action. The Receiver cannot surely be sued upon any claim until he has had an opportunity to reject it. Moreover, more than six years have elapsed since the filing of the said claim, and this action is barred by the statute of limitations, as defined and set out in § 7375, Comp. Laws N. D. 1913, and chapter 98 Session Laws, N. D. 1927." This theory is not tenable. The claim filed was for his own property and was filed in time. He did not need to file another, or what is called "an amended claim."

The defendant says the court erred in finding: that the proceeds of the bonds constitute a trust fund, and that such funds are still in the hands of the defendant so that the plaintiff is entitled to have a trust impressed on such fund to the extent of the value of his bonds with interest.

These bonds were not in a safety deposit box rented by the owner from the bank; but were deposited with the bank in the vaults for safe-keeping. The bank was acting in a fiduciary capacity and held the bonds in trust. This trust character is not destroyed because the St. Paul bank, and not the receiver or the Sawyer bank, sold the bonds. It was the Sawyer bank that misappropriated them. Plaintiff's claim is based on the right of property, the title to which is not affected by a change in the trust property.

"A mere change in the form of property confided to and converted by a trustee does not change the ownership, the beneficiary remaining the owner." Central Nat. Bank v. First Nat. Bank, 115 Neb. 444, 213 N. W. 745, 214 N. W. 75, 216 N. W. 302.

In Merchants Bank v. Schatz, 59 N. D. 365, 230 N. W. 18, we show that "an owner of property which has been fraudulently misappropriated may follow such property and reclaim it in any form into which it may have been changed." Being a trust creditor as distinguished from a general creditor, is not sufficient. In order to impress a trust upon the money in the hands of the receiver plaintiff must trace the bonds, or the proceeds, so as to show that they are included in this fund. Behm v. Baird, 59 N. D. 733, 231 N. W. 876. Plain-

tiff's right to follow his property ceases only when he can no longer ascertain it. In Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504, it is said: "To entitle the trust creditor to such a preference, it must at least be made to appear that the fund or property of the insolvent remaining for distribution, includes the proceeds of the trust estate." See also Atkinson v. Rochester Printing Co. 114 N. Y. 168, 175, 21 N. E. 178, 180; Holmes v. Gilman, 138 N. Y. 369, 20 L.R.A. 566, 34 Am. St. Rep. 463, 34 N. E. 205.

The record does not show definitely the exact date when the bonds were sold; but it appears from the record that it was after the insolvency of the bank and the appointment of the first receiver. The St. Paul bank, on account of the insolvency of the Sawyer bank, undertook to collect this debt from the collateral. In this it was assisted by the then receiver.

When the first receiver took charge of the bank he found collateral had been given to the St. Paul bank in the ratio of about three to one. This collateral included the plaintiff's bonds. This debt was settled by means of collections from this collateral made by the St. Paul bank and by the receiver's office, and over $30,000 worth of collateral returned to the present receiver. The receiver, by assisting the bank in the collection and permitting the application of the proceeds of these bonds to the debt—even though innocently done—assisted in the misappropriation, for the bank received the benefit and cannot now be heard to say plaintiff has not traced the funds. At the time the Sawyer bank closed, the right to this collateral passed to the receiver, subject to the rights of the St. Paul bank. Had the receiver taken the money of the bank and paid this debt to the St. Paul bank, so that the bonds had been returned to him, he would be required to deliver these bonds to the plaintiff. Instead of receiving the bonds he received the remainder of the collateral; but this remainder was augmented by the proceeds of the bonds, and thus the receiver got these proceeds. In other words the collateral returned to the receiver, after the liquidation of the claim of the St. Paul bank, was larger by the amount of the bonds than it would have been had the bonds been returned intact. From this returned collateral the receiver has collected a fund in excess of the amount of the bonds. Thus it can be said that the proceeds of these bonds came directly to the receiver. This is not

a case where the proceeds of the bonds came to the insolvent before insolvency and were hopelessly intermingled with other property so they cannot be traced. Thus we need not determine whether the rule laid down in the much discussed case of McLeod v. Evans, 66 Wis. 401, 57 Am. Rep. 287, 28 N. W. 173, 214, should be followed or whether we adopt the rule in Bank Comrs. v. Security Trust Co. 70 N. H. 536, 49 Atl. 113. These cases are discussing the rules applicable to the tracing of trust funds received by the insolvent before the appointment of a receiver or assignee. This is not the situation here. The proceeds are traced to the receiver, and no further tracing is necessary.

That the receiver has set aside what he calls a "preferred fund" and has only a few dollars in this special fund is not controlling. The courts do not intimate that if proceeds of trust funds have been received by the receiver any subsequent disposition thereof made by him affects the rights of the claimant. Hence it is not necessary that the plaintiff in this case show the receiver kept the proceeds in a separate fund or that he received the actual funds obtained by the sale of the bonds.

There is no merit in the contention that there are no funds in the hands of the receiver. Plaintiff's claim is $1,000, and interest according to the tenor of the bonds, and for 6 per cent interest since 1928. The total amount allowed by the court is $1,315.42. The evidence shows that the receiver has on hand belonging to the bank, a fund of more than $6,000, mostly from the returned collateral which collateral would have been much less were it not for the bonds delivered to the St. Paul bank and sold by it. So long as a fund remains from that collateral return the receiver has the proceeds. To take this trust money out of the general fund renders the latter no less than it ought to be. The real amount for distribution to general creditors is the same. The general creditors are not harmed, for the individual property of the insolvent bank is left intact for them. If the plaintiff were attempting to follow some payment made by the receiver out of these proceeds the situation might be different. While the plaintiff could have applied to the court for an order to deliver his property or its proceeds yet he is not precluded from maintaining this action particularly when the court granted permission to sue.

Defendant says that in any event the plaintiff is not entitled to judgment for more than the face of the bonds, therefore cannot recover

the interest specified in the bonds, nor the 6 per cent allowed him after the commencement of this action. The gist of the claim is plaintiff's ownership of the property taken. It is not a claim of debt against the bank. If accidentally the bonds left with the bank for safekeeping should be found among the assets of the bank, plaintiff would have these bonds with the uncashed interest coupons. The bonds and the interest coupons are his property. Having traced this property he is entitled to that property into which the bonds passed. As a general rule the interest on claims of general creditors ceases with the appointment of the receiver unless assets are sufficient. The receivership is an act of the court, and, where all claims are of equal status, the creditors share alike,—prorating the funds according to the face of the claims up to the time the receiver is appointed. But this is not a case of creditors of equal rank with conflicting interests. The plaintiff is not seeking to share in the assets of the bank. He is asking for his property or its value. His bonds bore interest at the rate of 3½ per cent. The bank converted the bonds and the unmatured interest coupons attached to the bonds. Had this latter been severed and converted and the plaintiff traced the proceeds to the receiver he would be entitled to their return or their value. The fact they were converted along with the bonds does not alter his right to them. Thus he is entitled to recover the interest on the bonds, according to the tenor of the bonds, up to the time they were converted.

The claim for interest at 6 per cent is a different proposition. Plaintiff is not entitled to this as part of the trust fund. He is not entitled to any interest on the interest coupons, for his claim is not a claim to share in the assets. If it were he would be the same as any general creditor. The judgment is modified to allow recovery of the face value of the bonds with interest to the date when they were appropriated at the rate specified in the bonds—3½ per cent—with costs, and with this modification the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.