HOMER MLLER, APPELLANT, v. THE FARMERS EXCHANGE BANK ET AL., RESPONDENTS.—67 S. W. (2d) 578.

Kansas City Court of Appeals. January 8, 1934.

*Sam T. Evans, J. Hubert Fuller, Rex H. Moore* and *Platt Hubbell* for appellant.

*Dudley & Brandom* for respondents.

TRIMBLE, J.—The Farmers Exchange Bank of Gallatin, Missouri, being insolvent, closed its doors and went into the hands of the State Banking Department on March 4, 1926, with S. L. Cantley, Commissioner of Finance, and Joseph N. Martin, Special Deputy Finance Commissioner, in charge of its affairs for liquidation.

Plaintiff, having on deposit a balance of $548.93 therein, in due time, filed his claim with the Deputy Commissioner for the allowance of that amount as a common claim, and same was allowed on September 25, 1926, and it was listed along with the other allowed claims, and filed in the office of the Recorder of Deeds as required by

Section 5334, Revised Statutes 1929 (11 Mo. St. Ann., Sec. 5334, p. 7559).

This action was brought by plaintiff on April 2, 1932, to have his common claim declared a preference. On the day this action was instituted, the defendants filed their joint entry of appearance. On June 1, 1932, plaintiff filed a duly verified first amended petition. Thereafter, on August 19, 1932, an application for a writ of prohibition was filed in this, our appellate court (at the relation of the defendant bank, the liquidation officers in charge thereof, and other depositors and creditors of said bank, holders of claims allowed against said bank, some of them common and some preferred), to prohibit the circuit judge having jurisdiction over the matters and proceedings in connection with the liquidation of said bank, from hearing the petition of some thirty-five similar holders of common claims upon which no claims for preference had been asserted prior to March 27, 1932, to have such common claims decreed to be preferred claims. On the hearing of this application for prohibition, had on December 12, 1932, the preliminary rule was quashed and the permanent writ denied. [State ex rel. Farmers & Merchants Bank et al. v. Beals, Judge, 55 S. W. (2d) 1005.]

Thereafter, on February 6, 1933, defendants filed a demurrer to plaintiff's said first amended petition in the case at bar, which demurrer the circuit court heard, and on March 10, 1933, during the February, 1933, term of said court, sustained the same upon the ground that said first amended petition ''failed to state facts sufficient to constitute a cause of action.'' After taking the necessary and proper steps, plaintiff appealed.

As hereinabove stated, this action to have plaintiff's *common* claim declared a *preferred* one was not instituted until April 2, 1932, more than five years after its allowance by the commissioner as a common claim. Hence, one of respondents' points raised in defense of the action is that it is barred by the general five-year Statute of Limitations. [Sec. 862, R. S. 1929, 2 Mo. St. Ann., Sec. 862, p. 1143.]

The first amended petition, against which the demurrer was leveled (after alleging the incorporation and existence of the bank, its being now in the hands of the State Banking Department of which S. L. Cantley, is Commissioner, and Joseph N. Martin Special Deputy Commissioner is in charge of the liquidation thereof), set up that on March 2, 1926 (just two days before the bank ceased to function), and while it was still open and transacting business and was being held out by its officers and directors as solvent and able to meet its obligations, plaintiff made two deposits, one of $2278.64 and the other of $638.77, aggregating $2917.41 which, on account of payments made by the bank, left a balance of $548.93 on deposit at the time said bank ceased to function and went into the State Banking Department for liquidation; that the funds and resources of the bank were en-

hanced and increased to the extent of said balance on deposit; that at all the times of making said deposits and the maintenance of the balance of said deposit in said bank, plaintiff believed said bank was solvent and able to meet its obligations, and made said deposits and maintained said balance therein relying upon said belief;

That at the time of making said deposits, defendant bank was hopelessly and irretrievably insolvent, well known to be so by its officers, directors and employees, but the plaintiff had no knowledge or notice of such insolvency, and the acts of said bank, acting through its officers, in so receiving said deposits when the bank was insolvent, "were acts of fraud on this plaintiff whereby the defendant bank became a trustee *ex maleficio* of the money of the plaintiff so deposited; and the title to said money did not pass to the defendant bank, but the ownership thereof remained and still remains in the plaintiff;"

That on March 4, 1926, the defendant bank ceased to function as a bank, and passed into the hands of the State Banking Department for liquidation, and at said time the defendant bank had cash in its vaults and in its physical possession largely in excess of the amount of plaintiff's deposit balance of $548.93; and at that time said balance had not been withdrawn but was in the possession of said bank;

The said first amended petition further set up that—

"The defendant bank has been in the process of liquidation continuously since March 4, A. D. 1926. The deposits so made by the plaintiff as aforesaid, have not been withdrawn or paid to the plaintiff either before or since March 4, 1926, and are still in the hands of the defendant bank and the liquidating agents thereof as a trust fund due the plaintiff;

"That by reason of the defendant bank being hopelessly and irretrievably insolvent as aforesaid at the time said deposits were made, it became and was the duty of the defendant bank and of the officers, directors, servants and employees in charge of the operation thereof, to advise the plaintiff of the fact that the defendant bank was at the time so insolvent and unable to meet its obligations, and, to have refused for that reason to accept and receive the deposits made by the plaintiff as aforesaid.

"By the making of said deposits in the circumstances aforesaid, the relation of debtor and creditor was not created and did not exist, but, a relation of trust and confidence was created and did exist, and said deposits became a trust fund only and the plaintiff is entitled, by reason of said facts, to have said sum of said deposits declared to be a trust fund and impressed on all the property of the defendant bank and to have the preferential payment thereof over general creditors.

"Within the time provided by law, the plaintiff duly filed with the said Commissioner of Finance and the said Special Deputy Commissioner of Finance in charge of the defendant bank, a claim

for the amount of said deposits, as a general or common claim, which amount of said deposits was duly allowed by said Special Deputy Commissioner of Finance, on the —— day of September, A. D. 1926, duly approved by the court, duly listed and filed with other claims in the office of the Recorder of Deeds.

"No dividend has ever been declared out of the assets and property of the defendant bank, and no payment of any dividend has ever been ordered by any court out of said assets and property, and no distribution of any fund or assets of the defendant bank has ever been made or ordered by any court.

"No payment of any dividend and no distribution of any of the property of the defendant bank has been made by any of said officers.

"All of the assets, property and funds of the defendant bank are intact and are in possession of the co-defendants of the defendant bank, being the previously named officers.

"S. L. Cantley, Commissioner of Finance, and Joseph N. Martin, Special Deputy Commissioner of Finance in charge, have sufficient funds on hand to pay the claim of the plaintiff in full, and have in their hands about one hundred thirty thousand dollars ($130,000) in cash in lawful money of the United States, or the equivalent thereof, as and for the assets and property of the defendant bank in liquidation. When the defendant bank passed into the hands of the Banking Department of the State of Missouri on March 4, A. D. 1926, it had assets and property of the reasonable value of one hundred thirty thousand ($130,000).

"Other creditors will suffer no disadvantage that they would not have suffered had the plaintiff asserted his right to priority when he first filed his claim for said deposits as a general or common claim.

"Information of facts tending to show, That the officers, directors and agents of the defendant Farmers Exchange Bank had received the deposits involved in this suit with knowledge of said insolvency of said bank, first came to the plaintiff in the summer of A. D. 1928, as a result of certain hearings and taking of testimony in the Daviess Circuit Court, and until the summer of 1928, after the completion of said hearings and testimony, the plaintiff did not have knowledge that said deposits had been received by said officers, directors and agents of said bank with knowledge of said insolvency.

"Wherefore, the plaintiff prays the court that the defendant Farmers Exchange Bank be declared, adjudged and decreed to hold the amount of the plaintiff's said deposits to the amount of five hundred forty-eight dollars and ninety-three cents ($548.93), as a trustee *ex maleficio;* and that said amount of five hundred forty-eight dollars and ninety-three cents ($548.93) be declared to be a trust fund in the hands of the Commissioner and Special Deputy Commissioner of Finance aforesaid; and that this plaintiff's claim for said sum

and amount be allowed to the extent of five hundred and forty-eight dollars and ninety-three cents ($548.93); and that said claim for a preference and for a preferential allowance in the sum of five hundred forty-eight dollars and ninety-three cents ($548.93) be allowed, adjudged and decreed to be a preferred claim and to be paid as a preferred claim before general creditors of the defendant bank are paid; the plaintiff prays for such other judgments, orders, decrees and relief as the court may deem just and proper in the premises.''

As the ground of the court's sustention of the demurrer was general, namely, that the first amended petition did not state facts sufficient to constitute a cause of action, we think it advisable to set out (of the eleven grounds of the demurrer), at least those which are relied upon and urged in defendants' brief. They are as follows:

1. Said petition fails to state facts sufficient to constitute a cause of action.

2. On the face of said petition the plaintiff has no right to recover, and no right to have the relief asked for.

3. . . .

4. Because on the face of the petition the plaintiff and claimant has been guilty of such laches as to preclude plaintiff from preferential allowance.

5. Because on the face of said petition the plaintiff's cause of action, if any he has ever had, has been and is completely barred by limitation.

7. Because on the face of plaintiff's petition the plaintiff has been guilty of inexcusable and injurious delay not contemplated by the law relating to the liquidation of banks.

8. Because on the face of said petition it appears that the plaintiff's claim for preference was filed at so late a date as to violate the statutes and Constitution of Missouri and the spirit of the law relating to the liquidation of banks.

9. ''Because on the face of plaintiff's petition the proceeding involved is a bank liquidation in this court under the law of the State of Missouri, relating to the liquidation of banks; that the proceedings, judgments, orders and entries of the court made within the time and in the manner and at the time provided for in the statutes of Missouri constitute and are *res adjudicata* of the plaintiff's claim, and that upon the face of said petition the said claim of the plaintiff, if any, was and has been filed too late to be considered and on the face of said petition the plaintiff has no right to recover on the same.''

10. ''That the first amended petition filed in this case is a departure from the original claim filed herein and constitutes a new, separate and distinct cause of action upon which the plaintiff has no right to recover in this petition.''

11. "That on the face of the plaintiff's petition the plaintiff is estopped to assert a claim for preference and has no right to recover for that reason."

The gist of plaintiff's action to have his claim declared to be a preferred one, is that at the time his deposits were made, the bank was insolvent and the bank's officers knew it, and by accepting the deposits under these circumstances, the ordinary relation of debtor and creditor did not arise between the bank and plaintiff, but the bank became a trustee *ex maleficio* of the money so deposited; that is, the bank, by its wrongful and fraudulent conduct, is held in equity to the duty and liability of a trustee, in relation to the deposit balance of $548.93, to prevent the bank from profiting by its own wrong. This, unless otherwise forbidden by law, will entitle the plaintiff to have his claim given a preference. [Cottondale Planting Co. v. Diehlstadt Bank, 220 Mo. 265, 273; St. Louis-San Francisco Ry. Co. v. Millspaugh, Commissioner, 278 S. W. 786; 3 R. C. L., p. 557, sec. 184.] See also Stoller v. Coates, 88 Mo. 514, where the same principle is applied.

Appellant says the *principal* questions of law raised herein have been decided by the Supreme Court in the case of Macon County v. Farmers Trust Co., 325 Mo. 784.

We would be relieved of considerable responsibility and much labor, if we could bring ourselves to regard the cited case as deciding the question of whether this action, to have plaintiff's common claim decreed a preference, is barred by the five-year general Statute of Limitation. But we cannot so construe it. In the first place, the general five-year Statute of Limitation was not involved in that case and could not be applied, for the reason that the bank in that case went into the hands of the Finance Commissioner on August 10, 1927, and, while it is not stated when the common claim was allowed nor when the action to have it declared a preference was filed, yet as the decision was handed down July 3, 1930, only two years, ten months and twenty-three days after the bank went into the hands of the Finance Commissioner for liquidation, it is manifest that the five years called for in the general statute had not run, and hence it *could not* apply.

In the second place, the defense was that the action for the preferred claim was barred by the *special* statutes of limitation contained in Sections 11716, 11718, to 11722, Revised Statutes 1919 (now Sections 5333, 5335 to 5339, Revised Statutes 1929, 11 Mo. St. Ann., pp. 7548 to 7552). It was held in said case that there was nothing *in said special statutes* that limited the time for bringing an action for preference on a common claim *allowed* by the commissioner, but that it must be brought before the circuit court has made an order, under Section 11722, Revised Statutes 1919 (now Sec. 5339, R. S. 1929, 11 Mo. St. Ann., p. 7562), authorizing the payment of dividends

or specifying priorities; and that the limitation of six months provided in Section 11720 (now Sec. 5337, 11 Mo. St. Ann., p. 7560) applies only to claims *not* allowed by the commissioner. (In the case at bar, the claim for which a preference is sought was duly allowed by the commissioner, and no order for the payment of dividends has been made.) The court in that case (325 Mo. 790-791) said:

"It cannot well be denied that, *but for the provisions of the sections of the statute above mentioned creating a special limitation as to claims against a failed banking institution,* a creditor of such banking institution *would have all the time provided by our general Statute of Limitations,* at least so long as the commissioner had sufficient funds of the bank in his hands, and other creditors suffered no injury by the delay, to present his claim and to assert any right to priority of payment he might have."

The court then refers to the well-known rule that—

"A statute of limitations should not be applied to cases not clearly within its provisions, and its application should not be extended by construction."

And then the court says—

"The *special* statutes of limitations found in the sections referred to should not be applied to bar a creditor's right to assert priority as to a claim filed in due time, unless the bar against the assertion of such right *comes clearly within the provisions of those sections.* It cannot be said that those sections clearly cover and put a time limit upon the making of claims of priority." (Italics mine.)

After referring to the provisions of Section 11722 (now Sec. 5339, R. S. 1929, 11 Mo. St. Ann., p. 7562), the court goes on to say—

"Applying to this statute the rule that the cases to which a *shortened* period of limitation applies will not be extended by construction, it would seem that the right of a claimant to assert priority for his claim, already duly filed, should not be barred by limitation, if made before the circuit court has made an order under Section 11722, authorizing the declaration and payment of dividends on claims and determining what claims are entitled to priority of payment." (Italics mine.)

The court, on page 792 of said decision, finally says—

"It is argued that the statutory provisions here considered evidence the legislative intent that failed banking institutions shall be liquidated quickly, possibly within a year after going into the hands of the Commissioner of Finance, and that, as the county's suit was not even instituted until more than a year after suits on rejected claims are required to be commenced, it is barred by limitation. No dividends had been paid or ordered paid, when this case was tried, and concededly no depositor or other creditor has suffered any disadvantage he would not have suffered had the county asserted its right to priority for its claim at the time it was filed with the

commissioner. If laches had been claimed and the facts justified the interposition of such claim, a different situation might appear.

"In the absence of a clear provision in the statute limiting the right of creditors of a failed banking institution to assert the right of priority of payment for their claims, we cannot hold that priority for the county's claim can properly be denied because the right thereto was not asserted when the claim was filed with the commissioner or within six months after the commissioner was required to approve or reject claims, particularly where no facts are present justifying denial or priority on the grounds of laches or estoppel."

From all of which it would appear that the foregoing cited case is an authority *against* defendant's claim that to uphold plaintiff's contention herein would be in violation of the spirit, purpose and intent of the statutes in relation to the liquidation of insolvent banks.; and it would also seem to hold against their claim that there is a departure in plaintiff's pleading, or that the allowance of the common claim is *res adjudicata* of the claim for a preference, or that plaintiff should be denied priority, because of laches or estoppel. But it is not so clear that the decision holds that an action for priority is not subject to the *general* five-year limitation statute where that length of time has elapsed between the allowance of the claim as a common one and the institution of the action to have it declared a preference. It is not seen how its allowance as a common claim by the commissioner can be *res adjudicata* of anything. The commissioner has no judicial power. His act in allowing the claim as a common one is but a mere *listing* of the claims within the four months required by Section 5333 and filing the same in the recorder's office as provided by Section 5334. It is true under Section 5335, if an objection is made to a claim the commissioner may refer the matter to the circuit court, or, under Section 5336, the commissioner may approve or reject claims himself but has no power to decide priorities; and under Section 5337, a claimant whose claim has been duly filed but has *not* been approved by the Commissioner, may, at any time within six months after the expiration of the time for the commissioner's approval or rejection of claims, *"institute and maintain an action* thereon against such corporation or banker." But, in the case at bar, no objection was made to plaintiff's claim (nor to any others so far as we are apprised), hence there was no necessity for the exercise of any judicial power in this case *until* claimant sought to have his common claim adjudicated as to priority. And then it was incumbent upon him to institute an *action* for that purpose. "An action is the form of a suit in a court of justice, given by law for the recovery of that which is one's due; the lawful demand of one's right." [Black's Law Dictionary, p. 27.] To "institute an action" means that plaintiff must file a written statement of the *facts* upon which his case is rested. In the action for the priority herein

sought, it is *not* upon the relation of debtor and creditor which is the basis of a mere common claim, but upon principles of equity involving an entirely *new* and different set of claimed facts. This is recognized in this case by the filing of a *petition* and then of an *amended petition* and by the necessity of bringing in the parties defendant, either by summons or by getting them to enter their voluntary appearance. How then can it be said that the allowance of the common claim is the commencement of the action herein involved? For the foregoing reasons, we can readily agree that the allowance of plaintiff's balance on deposit can constitute no element of *res adjudicata* so as to prevent the adjudication of the question of its priority. But we are unwilling to sanction the idea that the question of limitation can be avoided or determined by treating the filing and allowance of the claim as a common one as the *commencement* of the action, or by regarding the attempt to have the claim declared entitled to a preference as a mere *reclassification* thereof, or as merely a prayer for *additional relief* in the same case. The case of Larson v. Baird, 236 N. W. 634, decided by the Supreme Court of North Dakota, May 19, 1931, may appear to reach a different conclusion, but in that case the claim, *as filed at the outset,* was for a preference and not, as in the case at bar, for a common claim, and, in our view, th makes a vital difference. However, as we do not have access to the statutes now in force in that State, and as the decisions of a foreign state do not have a controlling effect, but are advisory only, we do not consider that, in any event, it should be followed.

Nor, as hereinbefore stated, are we able to construe the cited-and-relied-upon case of Macon Co. v. Farmers Trust Co., 325 Mo. 784, as holding that the *general* Statute of Limitation does not govern an action for a preference, when *that* question was not involved in the case, the general statute not having fully run. No doubt the court in at least one place spoke of "limitation" without using the word "special" but it was the *special* Statutes of Limitation of which the court was speaking and the *general* statute was not involved, hence it is not seen how the court could be considered as including the latter.

No doubt the Banking Act (Art. 1, Chap. 34, R. S. 1929, 11 Mo. St. Ann., p. 7525) is a separate code, scheme or plan, independent and complete or sufficient within itself, as to the liquidation of insolvent bank; but it contains no special limitation therein as to the bringing of an action to obtain a preference, but requires only, inferentially perhaps, that it *must* be brought before any dividends are declared and priorities are specified, as specified in Section 5339. However, requiring it to be brought *before* this time is not tantamount to saying that if such order has not been made, it can be brought at any time *regardless* of the general five-year limitation statute. It must be borne in mind that Section 5339 in using the words "At any

time'' is not dealing with the time in which an action for a prefer- ence may be instituted, but the time when the circuit court may order dividends to be paid in which order priorities are to be specified. And to hold that the general five-year statute has no control over cases like the one at bar, where *more* than five years have been allowed to elapse between the allowance of the common claim and the institution of the suit to have it declared a preferred one, is, in effect, to judicially repeal the general five-year statute, or to have its applicability denied by construction. For these reasons, and especially because we do not regard the Macon County case as strictly in point on the particular question here discussed, we are constrained to hold that the question of whether the general five-year Statute of Limitation has any control, under the particular circumstances of this case, must be determined on general principles applicable thereto and not upon the Macon County case.

It is urged that if any statute of limitation·applies to a case of this nature it is under the third and last subdivision of the *ten*-year statute, Section 861, Revised Statutes 1929, 2 Mo. St. Ann. 1139, i. e., ''actions for relief, not herein otherwise provided for,'' but, of course, it can have no application to this case, since the ten years have not run.

It would seem, however, that the fifth section or classification of Section 862, Revised Statutes 1929, 2 Mo. St. Ann., p. 1143, the five- year statute, is applicable, viz.: ''An action for relief *on the ground of fraud*, the cause of action in such case *to be deemed not to have accrued until the discovery by the aggrieved party*, at any time within ten years, *of the facts constituting the fraud.''* (Italics mine.)

This is rendered all the more apparent when we recall that the basis of the cause of action is the *fraud* of the bank officers in accepting plaintiff's deposits *knowing the bank to be insolvent*, and which the amended petition alleges he *did not know* and *did not discover until the summer of 1928*. In other words, the petition, impliedly at least, recognizes the possible applicability of Section 862 and hence it was drawn so as to bring the case within its terms.

It is well settled that a litigant in offering a general demurrer to a petition in effect admits all well-pleaded facts stated therein, Now, the allegations as to the fraud and the bank officers' knowledge thereof and the plaintiff's later discovery of it, were not pleaded as mere conclusions of law, but were stated as facts. Moreover, we cannot say, as a matter of law, that the mere closing of the bank because of insolvency, only two days after the deposits in question were made, was notice to plaintiff that the officers *knew* the bank was insolvent at the time they received the plaintiff's deposits; nor that the closing furnished plaintiff with notice of such facts as made it incumbent on him to investigate for himself the question of the bank officers' knowledge of such insolvency at the time the deposits were received,

nor that facts which would have disclosed such knowledge were within his reach or at his disposal. The amended petition says the information of facts tending to show that the officers had received the deposits with knowledge of said insolvency "first came to the plaintiff in the summer of A. D. 1928, as a result of certain hearings and taking of testimony in the Daviess Circuit Court; and until the summer of A. D. 1928, after the completion of said hearings and testimony, the plaintiff did not have knowledge that said deposits had been received by said officers, directors and agents of said bank with knowledge of said insolvency."

This allegation would show that knowledge of insolvency on the part of the bank officers at the time the deposits were made, was not in reach of plaintiff or under his control, so as to make the mere subsequent closing of said bank notice to plaintiff that the officers knew at the time of receiving the deposits the bank was insolvent, or require him to institute proceedings on his part to ascertain whether they had guilty knowledge at the time of the reception of plaintiff's deposits.

So that, if we are correct in this view of the pleading, the five-year Statute of Limitation, if it would otherwise apply, has not *yet* run since the *discovery* of the facts necessary to constitute the basis of plaintiff's cause of action.

As we have heretofore said, the *Macon County* case has disposed of the question of laches and estoppel, yet we may also observe that, under the particular circumstances of this case, no elements to constitute the legal doctrine of laches arises herein. [Carlin v. Bacon, 16 S. W. (2d) 46, 49; Rutter v. Carothers, 223 Mo. 631, 640, 641; Hunter v. Hunter, 39 S. W. (2d) 359, 363; Matthews v. VanCleve, 282 Mo. 19, 33.] The same is true as to the estoppel claimed. [Raynor v. Scandinavian, etc., Bank, 25 L. R. A. 716, 719, 720; Fidelity, etc., Bank v. Farmers, etc., Bank, 45 S. W. (2d) 1090; Messenger v. Carroll Trust, etc., Co., 187 N. W. 545.]

In view of the foregoing, we are constrained to hold that the learned trial court erred in sustaining the demurrer, and hence the judgment should be, and is, reversed and the cause remanded with directions to try the case on its merits and render such judgment as the evidence may disclose to be proper. All concur.