[Civ. No. 8348.   Third Dist.   Apr. 2, 1954.]

BROCKWAY LAND AND WATER COMPANY (a Corporation), Appellant v. COUNTY OF PLACER, Respondent.

Robert E. Shields for Appellant.

Al. Broyer, F. L. Sinclair and Leland J. Propp for Respondent.

PAULSEN, J. pro tem.*—This appeal is taken from a judgment quieting defendants' title. There is also a purported appeal from the order denying appellant's motion for a new trial. This is not an appealable order and it is ordered dismissed.

In 1911 F. B. Alverson and Ferguson Breuner Company owned a large tract of land lying immediately north of Lake Tahoe. At that time it was subdivided and a map was filed dedicating certain streets and highways to public use. This was accepted by the Board of Supervisors of Placer County and there is no question concerning the fact of dedication. After some years had elapsed, however, a dispute arose as to the location and the ownership of the property involved in this action. In view of the conclusion we have reached, it is not necessary to discuss the facts of the dedication further.

Early in the year 1950 defendant county, claiming that the land in dispute was dedicated to a public use, undertook to improve it for highway purposes. On June 9, 1950, appellant filed its complaint herein setting forth two causes of action: the first was in the usual form of a cause of action to quiet title; the second incorporated by reference those parts of the first alleging plaintiff's ownership, alleged the facts of the threatened improvement of the property by the defendants, and demanded relief in the form of a temporary injunction.

After a lengthy hearing growing out of the second cause of action, the court denied injunctive relief. More than a year elapsed thereafter before the case came on for trial on the first cause of action before the same judge. At the time of trial of the quiet title action, appellant's present counsel was substituted in the place and stead of the original counsel, and in fairness to him it should be noted that this was his first appearance in any of the proceedings herein mentioned.

At this trial, appellant introduced or otherwise relied upon the following records to establish its title: (a) Deed from Ferguson Breuner Company and F. B. Alverson to Tahoe Vista Investment Company; (b) deed from Tahoe Vista

*Assigned by Chairman of Judicial Council.

Investment Company, a dissolved corporation by its trustees, to George H. Clark; (c) deed from George H. Clark and his wife to The Sherman Company, Nevada, a corporation; (d) records of the United States District Court in San Francisco, dated July 27, 1930, showing that H. G. Feraud was appointed receiver of The Sherman Company, Nevada; (e) decree of the Superior Court of Placer County, entered October 3, 1949, in action No. 15574, entitled *Brockway Land and Water Company* v. *H. G. Feraud*, as receiver of The Sherman Company, Nevada, a corporation; and (f) deed executed October 13, 1949, by a commissioner appointed by the Superior Court of Placer County in said action No. 15574, after H. G. Feraud, as receiver, although personally served, had defaulted.

Appellant contends that these records are sufficient, prima facie, to establish its claim of ownership and that no competent or admissible evidence was offered by respondents to refute them. Respondents concede that this is true if the decree of the Superior Court of Placer County in said action No. 15574 and the commissioner's deed executed pursuant thereto were valid.

It is admitted that when The Sherman Company, Nevada, was sued in the United States District Court, and that court appointed a receiver who took possession of its property, it had title to the land involved in the present action, subject to whatever rights the county of Placer had gained by virtue of the dedication heretofore mentioned. Appellant asserts that it had entered into an agreement with the receiver for the purchase of the land in question; that he had been authorized by the district court to convey the property; that he had executed a deed to appellant but had failed to include all the property and that in order to correct this error, appellant had instituted the suit in the Superior Court of Placer County to have the receiver's deed reformed. It is conceded that appellant has no title unless the action in the state court against the receiver appointed by the district court is valid and the commissioner's deed passed title. Up to this point there was a complete break in the chain.

Respondent's answer in the present action denied appellant's allegations of ownership but presented no issue of fraud in its procurement and in no manner directly challenged the validity of the decree in the suit for reformation of the receiver's deed. However, over the strenuous objection of appellant that its reception into evidence constituted a

collateral attack on the decree, the court admitted the order of the United States District Court in the receivership action, dated December 4, 1939, terminating the receivership, discharging H. G. Feraud, as receiver, and stating:

"It Is Further Ordered, Adjudged and Decreed, that said H. G. Feraud shall transfer by proper endorsements, assignments and/or deeds to The Sherman Company, Nevada, its successors or assigns, any and all assets or property of said receivership remaining in his name as receiver; and shall deliver possession of any assets or property remaining in his possession as said receiver; and

"It Is Further Ordered, Adjudged and Decreed that title to and the right to possession of any and all assets or property of said receivership estate now known or which may hereafter be discovered shall revest and/or remain in said Sherman Company, Nevada, its successors or assigns. . . ."

The court also admitted, over the objection of appellant, a transcript of the testimony of the president of appellant company given in the action for reformation, the purpose being to show that when appellant brought that action its president knew H. G. Feraud was no longer the receiver of The Sherman Company, Nevada, and that he would not appear in the suit. It is true that the witness did not specifically admit knowledge of the receiver's discharge, but as appears from the following testimony, considered in the light of all the surrounding circumstances, it is difficult to escape that conclusion. We quote:

"Q. . . . You have discussed the matter with Mr. Feraud, have you not? A. I have. They were overlooked.

"Q. And you suggested to him that he give you a deed to these, but he suggested that it would be better for you to bring a suit to get it, is that right? A. No.

"Q. I say, he suggested it would be better to bring a suit? A. Yes, he thought that was the best way to do it.

"Q. Since the suit has been filed you have been in communication with him, particularly by telephone? A. I have talked with him several times by telephone.

"Q. You know that he has no intention of appearing in this matter? A. That is correct. He assured me that."

Appellant now argues that the reception of such evidence constituted a collateral attack on the decree in the suit for reformation and was clearly inadmissible.

The purpose of introducing such evidence was to show lack of jurisdiction in the Superior Court of Placer County, and fraud in procuring an appearance of jurisdiction. Feraud,

as receiver, was the sole defendant in the action for re-
formation and unless he was the qualified and acting receiver
at the time, he had no power to perform, and the state court
had no power to appoint a commissioner to perform for him.
If he had been discharged, his reformed deed, or that of the
commissioner acting in his place, conveyed no interest in the
property. In 45 American Jurisprudence, page 379, it is
stated:

"A receiver who has been discharged is relieved from all
his official duties as such, and he is neither a necessary nor
a proper party to an action on any such liability. Clearly,
after his discharge, a receiver is not a proper party to an
action on a contract made by him in his official capacity.
Indeed, an action cannot be maintained against a receiver,
even for the purpose of establishing the validity of a claim,
after he has been discharged and has ceased to hold any rela-
tion to the fund out of which alone payment can be secured."

And again in 45 American Jurisprudence, page 283, the
following statement is found: "The effect of a discharge of
a receiver is to relieve him from all official duties as such.
He is not thereafter a proper party to an action, and no
judgment can be rendered against him thereon."

Assuming that the state court had the power to reform a
deed executed by a receiver under appointment by a federal
court and that the decree was valid on its face, the record
discloses that appellant had waived its right to object on
the ground of collateral attack. During the trial of the second
cause of action wherein appellant sought a preliminary injunc-
tion, Mr. Robinson, then attorney for appellant, made no
objection to the introduction of evidence which unequivocally
showed that Mr. Feraud, the receiver of The Sherman Com-
pany, Nevada, was discharged many years prior to the bring-
ing of the action for reformation of his deed.

The testimony of Mr. Wells concerning the action for
reformation was:

"The Witness. The Complaint in that action, I believe,
shows his default. Whether there was personal service or by
advertising, I don't recall. He actually filed a deed, but
he was discharged.

"The Court. I am wondering if he was personally served.

"The Witness. He was no longer, I believe he was no
longer receiver at the time he was served at the time of that
action, and believe he was discharged in . . . I have off-record
information he was discharged in '38 as receiver.

"The Court. What records have you that he was discharged at the time he was served?

"Mr. Propp. I am in a position to introduce that as soon as I finish with Mr. Wells."

Mr. Propp, attorney for defendants, then called particular attention to the order of discharge, read it in full, and introduced it into evidence. Mr. Robinson, appellant's attorney, stated that there was no objection.

The court was thus put upon notice that in all probability the plaintiff in the case for reformation had knowingly brought suit against a defendant who no longer had the power or right to perform, although the record might appear otherwise if not fully explored. The trial court had before it a record showing that appellant had for some reason invoked the aid of a state court to reform a deed executed by a receiver under appointment of a federal court, instead of asking relief from the United States District Court which had appointed him. It had before it the record in the suit for reformation which disclosed that the complaint was filed originally on June 30, 1949; that while it was alleged therein and in the amended complaint filed later that H. G. Feraud was appointed receiver on June 27, 1930, there was no allegation that he was still the duly qualified and acting receiver at the time the complaint was filed in 1949.

In 15 California Jurisprudence, pages 61, 62, it is said:

"The public policy underlying the doctrine of collateral attack is not such as to prevent the interested parties from waiving the protection of the rule limiting collateral inquiries to the face of the record. The rule is not that a judgment which is void will be enforced as if it were valid, but that it cannot be shown to be void except in certain ways. And if the parties admit or stipulate, or fail to object to the evidence of, the facts showing a lack of jurisdiction, it is then established that the judgment is void as effectively as shown by the record; *and whenever such fact is brought to the attention of the court, it is the duty of the court to so declare as a matter of law.*" (Italics supplied.)

In *Thompson* v. *Cook*, 20 Cal.2d 564, 569 [127 P.2d 909], the Supreme Court states the rule as follows:

". . . [A]lthough the judgment or order is valid on its face, if the party in favor of whom the judgment or order runs admits facts showing its invalidity, or, without objection on his part, evidence is admitted which clearly shows the

existence of such facts, then it is the duty of the court to declare the judgment or order void."

Appellant's present counsel does not claim that he is not bound by the actions of his predecessor, but argues that the two hearings "were almost separate trials" and that on a second trial a party should be permitted to object even though there was no objection when the evidence was offered at the first trial or hearing. The circumstances of this case are not the same as those existing on a retrial after reversal or the granting of a motion for new trial, and whatever merit appellant's argument may have under such circumstances we think it is not applicable here. Both the hearing on the application for injunction and the trial to quiet title, involved the matter of appellant's ownership of the property and the only difference was in the relief sought. On the first hearing, the court necessarily had to consider the question of title and its order denying the injunction was undoubtedly based, in part, on evidence that appellant had no title. It would be strange, indeed, if in the same action, tried piecemeal on the same complaint, the court when advised of circumstances such as existed here, could not consider evidence indicating that the court had been the victim of fraud.

There is nothing sacred about the rule limiting collateral attack; it is a rule of convenience designed to bring an end to litigation when parties have had an opportunity to have their day in court. The rule that permits and makes it the duty of a court to protect itself against fraud is equally important and should not be unduly circumscribed or limited. To do so might well lead to an attempt to create a third branch of our jurisprudence designed to correct that wherein equity itself is defective by reason of its universality.

The trial court was correct under the circumstances in holding that appellant had no right or title to the property in dispute. It is therefore in no position to question other provisions of the judgment relating to the rights of respondents.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.