[No. H004530. Sixth Dist. Sept. 28, 1989.]

JOEL VITUG, a Minor, etc., et al., Plaintiffs and Appellants, v. DIANA GRIFFIN, Defendant and Respondent.

COUNSEL

James K. Roberts and Richard P. Cotta, Sr., for Plaintiffs and Appellants.

L. Christian Spieller, Alan F. Hunter and Gassett, Perry & Frank for Defendant and Respondent.

OPINION

AGLIANO, P. J.—Plaintiffs filed a tort action against a receiver in possession of real property without first seeking permission to do so from the court which had appointed the receiver. The receiver was subsequently discharged without notice to plaintiffs and before they had obtained the

required permission to sue. Moreover, plaintiffs' claim was not accounted for in the receiver's final report and account to the court. The receiver was later dismissed from the lawsuit on the ground that her discharge shielded her from tort claims which arose during the receivership. Two questions present themselves: 1) Was plaintiffs' claim against the receiver barred by their failure to obtain permission to sue her? 2) If not, was it barred by her later discharge as receiver? We resolve these issues in plaintiffs' favor and therefore reverse the judgment dismissing the receiver. We also reverse a companion order which denied plaintiffs leave to amend.

### BACKGROUND

On March 22, 1986, a fire occurred in a San Jose apartment complex resulting in the deaths of Connie and Rosario DeVilla. At the time of the fire the property was in foreclosure and a receiver, Diana Griffin, had been appointed by the court to manage the property.

On May 23, 1986, the DeVilla heirs filed a complaint for wrongful death against a host of defendants, including Diana Griffin. The allegations stated various acts of negligence in maintaining the property such as inadequate security and failure to provide smoke detectors and fire alarms. Plaintiffs did not follow established procedure by seeking court authorization to sue Griffin in her capacity as receiver. Nonetheless Griffin filed a general denial on July 15, 1986, without raising any objection that plaintiffs were proceeding improperly. Her answer simply asserted the standard affirmative defense that the complaint did not state a cause of action against her.

Approximately a month later, on August 16, 1986, Griffin was discharged as receiver by the court and her performance bond was exonerated. Griffin's final account and report of administration did not inform the court in the receivership action of plaintiffs' lawsuit against her, nor were plaintiffs notified of the discharge proceedings.

Following her discharge, Griffin continued to take part in the lawsuit by filing responsive pleadings and, through counsel, participating in discovery. In due course plaintiffs learned that Griffin had been discharged as receiver. On April 17, 1987, they filed a petition in the receivership action seeking that court's permission to continue their lawsuit against Griffin. On June 10 the court denied the petition on the ground that Griffin's discharge had relieved her from liability as receiver. Plaintiffs' petition for a writ of mandate was summarily denied by this court on September 3, 1987.

Plaintiffs next sought leave in the trial court to file a fourth amended complaint in which they proposed to add a cause of action alleging that by

concealing the existence of their claim, Griffin had obtained her discharge order through extrinsic fraud. Their proposed fourth amended complaint also purported to add United States Fidelity and Guaranty Company, the surety on Griffin's performance bond, as a defendant in the action.

On the basis of the June 10 order denying permission to sue, Griffin moved to dismiss plaintiffs' action against her. On March 30, 1988, that motion was heard together with plaintiffs' motion for leave to file their fourth amended complaint. Griffin's motion was granted and plaintiffs' denied. Plaintiffs appeal from both orders.[1]

## DISCUSSION

In regard to the order of dismissal, we have grouped plaintiffs' various assignments of error into the two issues we identified in the introduction: First, what was the effect of plaintiffs' failure to obtain the court's permission before suing Diana Griffin in her capacity as receiver? Secondly, did Griffin's discharge bar plaintiffs' claim, considering that she neither informed them of the discharge proceedings nor informed the court of their claim? Our resolution of those questions leads to the conclusion that Griffin's discharge was void as to plaintiffs; thus the order dismissing Griffin from the lawsuit and the consequent judgment of dismissal must be reversed.

As to the second order, it is apparent that the trial court's decision to dismiss Griffin from the lawsuit in large part determined its contemporaneous ruling denying plaintiffs leave to amend their pleadings. We will therefore reverse that ruling in order to give plaintiffs an opportunity to recast their motion in light of our holding permitting their action to proceed against Griffin.

### 1. *Failure to Obtain Court Permission to Sue the Receiver*

■ The rule requiring court permission to sue a receiver stems from Code of Civil Procedure section 568. That section empowers a receiver to bring and defend actions as a receiver, but only "under the control of the

---

[1] As a technical matter, plaintiffs should have appealed from the written order and judgment of dismissal filed May 19, rather than from the minute order. (Code Civ. Proc., § 581, subd. (d).) Furthermore, we note that an order denying leave to amend is not normally an appealable order. (Code Civ. Proc., § 904.1; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 84.) Respondent has raised no objection to these defects, however, and the case has been fully briefed. Moreover, there is a final judgment in this matter, at least as to Griffin. Therefore, we will proceed to review both orders as embraced by that judgment. (*Randall v. Beber* (1950) 101 Cal.App.2d 179, 181 [225 P.2d 291].)

court." At the outset, plaintiffs argue that the rule was eliminated in 1982 when the Legislature revised certain sections of the Code of Civil Procedure. We find no merit in this claim. The 1982 revisions had no effect on section 568, which has uniformly been interpreted as requiring a claimant suing a receiver to seek court permission. (6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 364; *Ostrowski* v. *Miller* (1964) 226 Cal.App.2d 79, 84 [37 Cal.Rptr. 790]; *McCarthy* v. *Poulsen* (1985) 173 Cal.App.3d 1212, 1219 [219 Cal.Rptr. 375].)

The rule that claimants must apply to the court before suing a receiver is founded upon notions of judicial economy. In most cases a claimant can obtain appropriate relief in the receivership action; therefore an independent action will not be necessary. (*Ostrowski* v. *Miller, supra,* 226 Cal.App.2d 79, 84.) By refusing permission to sue, the appointing court can require a claimant to intervene in the receivership proceedings to assert his claim, thus protecting the receiver from a proliferation of lawsuits. (*Ibid.*) But the court may not refuse permission where the effect would be to cut off plaintiff's rights. If the court cannot afford plaintiff the same relief in intervention as he is entitled to in an independent action, refusal to permit the lawsuit to proceed will constitute an abuse of discretion. (*Id.* at p. 85; *De Forrest* v. *Coffey* (1908) 154 Cal. 444 [98 P. 27].) For example, if plaintiff's claim contemplates a jury trial, the court may not require plaintiff to try the claim before the court sitting in equity in the receivership action. (*Chiesur* v. *Superior Court* (1946) 76 Cal.App.2d 198, 202-203 [172 P.2d 763].)

Since the underlying purpose of the rule is simply to accommodate all claims, if possible, in the receivership action under the supervision of the appointing court, it follows that the permission requirement is not a jurisdictional one, and the leading California case has so held. (*Ostrowski* v. *Miller, supra,* 226 Cal.App.2d at p. 82; see also *Copeland* v. *Salomon* (1982) 56 N.Y.2d 222 [451 N.Y.S.2d 682, 685, 436 N.E.2d 1284].) "[F]ailure to obtain leave to sue 'is not jurisdictional, and failure to obtain is an irregularity which may be cured at any stage of the proceedings. . . . When the court gives permission to sue, it may grant such permission as of the time of the commencement of the action.'" (*Ostrowski, supra,* at p. 83, quoting *Larson* v. *Baird* (1931) 60 N.D. 775 [236 N.W. 634, 635].)

■ Furthermore, there is authority for plaintiffs' next contention, that the failure to obtain court permission to sue may justify a plea in abatement but it must be raised by defendant at the earliest opportunity or it is waived. (*Ostrowski* v. *Miller, supra,* at p. 86.) "'If so waived the court will be rarely justified in permitting the defense to be made later.'" (*Kelley* v. *Upshaw* (1952) 39 Cal.2d 179, 189 [246 P.2d 23], quoting *Bemmerly* v. *Woodward* (1899) 124 Cal. 568 [57 P. 561].) The proper time to raise a plea in

abatement is in the original answer or by demurrer at the time of the answer. (*Tingley* v. *Times Mirror* (1907) 151 Cal. 1 [89 P. 1097].) It is a technical objection and must be pleaded specifically. Thus an affirmative defense or demurrer which contains a general assertion that plaintiff has not stated a cause of action does not suffice to raise a plea in abatement. (*Nevills* v. *Shortridge* (1905) 146 Cal. 277, 278 [79 P. 972]; *Kelley* v. *Upshaw, supra,* at pp. 188-189.)

In summary, plaintiffs' failure to obtain permission at the time they filed suit against the receiver is not in itself a fatal defect. Moreover, it appears here that Griffin waived her right to require plaintiff to obtain permission to sue by virtue of her continued participation in the lawsuit without raising the objection. Had Griffin still been serving in her capacity as receiver when plaintiffs petitioned for permission to sue, the cases suggest that denial of permission would have been an abuse of discretion. (See, e.g., *Chiesur* v. *Superior Court, supra,* 76 Cal.App.2d at p. 202.) Here, however, the matter is complicated by the fact that Griffin had been discharged by the time plaintiffs' petition was before the court.

## 2. *The Discharge of Griffin as Receiver*

■ As a general proposition a receiver has no official duties and is not a proper party to any action after being discharged by the court. (*Brockway etc. Co.* v. *County of Placer* (1954) 124 Cal.App.2d 371, 375 [268 P.2d 524].) The discharge order operates as res judicata as to any claims of liability against the receiver in her official capacity. (*Aviation Brake Systems, Ltd.* v. *Voorhis* (1982) 133 Cal.App.3d 230, 234 [183 Cal.Rptr. 766].)

■ At first glance these rules support Griffin's position that the August 16, 1986, order of the court discharging her as receiver absolved her of all liability in that capacity. Plaintiffs, however, point out that the discharge order cannot be res judicata as to them since they were not parties to the receivership and had no notice of the proceedings. Griffin counters that plaintiffs cannot complain of lack of notice: had they proceeded in the proper manner, by timely seeking permission, they would have been notified of the discharge proceedings as a matter of course. Plaintiffs in turn emphasize that the discharge of the receiver without notice to them cut off their claim and violated due process. Further, they contend that Griffin, as a court-appointed receiver, had a duty to inform the court of their lawsuit against her before obtaining a discharge of liability.

First, it is hornbook law that the doctrine of res judicata does not operate as a bar to those who were not parties to the original proceeding. In *Aviation Brake Systems, Ltd.* v. *Voorhis, supra,* 133 Cal.App.3d 230, the case

relied upon by Griffin, plaintiff sued a receiver, after his discharge, for failure to perform his duties as receiver. By demurrer, the receiver raised the discharge order as a bar to the suit. A judgment of dismissal in favor of the receiver based on res judicata was upheld on appeal. But in that case plaintiff had appeared at the hearing on the receiver's final report and account, and had raised objections and filed points and authorities in that proceeding. The court had overruled the objections, approved the final report and released the receiver. Since plaintiff had participated in the action, the court held that any objection he had could and should have been raised at that time; thus the order in that action was res judicata. (*Id.* at p. 235.) Plaintiffs in our case, however, did not take part in the proceedings which resulted in Griffin's discharge because they had no knowledge of those proceedings. Res judicata cannot operate to cut off a claim which they had no opportunity to litigate without violating fundamental notions of due process. (See, e.g., *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 547-552 [96 Cal.Rptr. 709, 488 P.2d 13].)

Griffin argues that plaintiffs' lack of notice was a direct result of their failure to follow accepted procedure and seek court authorization for their lawsuit. But as we noted in the previous section, plaintiffs' failure to obtain permission was not a jurisdictional defect and in any case Griffin waived it by not raising it. At most plaintiffs' omission was a procedural irregularity, of minor import when weighed against constitutional deprivation.

Furthermore, a receiver as an officer of the court is held to a strict accountability. (*Ostrowski* v. *Miller, supra,* 226 Cal.App.2d at p. 83; *Miller* v. *Fidelity etc. Co. of Maryland* (1935) 3 Cal.App.2d 580, 584 [40 P.2d 951].) We must presume that Griffin was aware of plaintiffs' lawsuit against her since she had filed an answer in that action. As a court officer, she had a duty to inform the court of all claims affecting the receivership before obtaining a discharge of her liabilities.

While this precise issue is one of first impression in California, other jurisdictions have considered and determined it. The New York case of *Copeland* v. *Salomon, supra,* 451 N.Y.S.2d 682, presented facts remarkably similar to ours. In that case Salomon, like Griffin, was appointed by the court as receiver to manage real property in foreclosure. During his receivership, a tenant was injured on a stairway in the building. The tenant and his wife filed a complaint against Salomon for negligence, however, failing to obtain permission to sue from the court which had appointed him. Thereafter, Salomon sought and obtained a discharge as receiver without either informing the court of plaintiffs' lawsuit or notifying plaintiffs of the discharge proceedings. After his discharge Salomon filed a general answer to the complaint, but eventually moved to dismiss for want of jurisdiction. The

New York high court concluded that Salomon "was obliged as an officer of the court to set forth plaintiffs' claim as a contingent liability in his accounting to the foreclosure court and to give plaintiffs notice of that accounting . . . ." (*Id* at p. 685.) It upheld a lower court's order which had vacated Salomon's discharge as to plaintiffs' claim and had granted them leave to sue.

The reasoning behind the *Salomon* decision applies equally in our case. ■ A receiver in possession of real property stands in the shoes of the owner and has a duty to maintain the property in the same manner as would the owner. (*Chiesur* v. *Superior Court, supra,* 76 Cal.App.2d at pp. 200-201.) He may incur liability for negligence in his official capacity in the performance of his duties which results in injury to those occupying the property. Any recovery is payable out of receivership funds; thus a suit for personal injury damages is a claim, albeit a contingent one, against the receivership estate. (*Ibid.; Copeland* v. *Salomon, supra,* 451 N.Y.S.2d at pp. 688-689.) While the receiver functions as the owner, he is also the representative of the court and holds the property "for the benefit of . . . creditors and others in whose favor claims might exist or arise against the estate in receivership." (*Chiesur, supra,* at pp. 200-201.) It stands to reason that all creditors, whether their status is contingent or fixed, have a right to be heard concerning distribution and apportionment of receivership funds. ■ "Though generally a receiver stands indifferent as between creditors, he is bound to see to it that each has an opportunity to enforce his claim and to give them reasonable aid in doing so [citations] and if with knowledge of a claim he nonetheless pays out all of the receivership funds he may incur personal responsibility for the payment of such a claim. [Citations.]" (*Copeland, supra,* at p. 689.)

The *Copeland* court relied upon an earlier case out of Iowa, *Miller* v. *Everest* (1973) 212 N.W.2d 522. *Miller* also involved a personal injury action against a receiver in foreclosure. In that case the receiver had been discharged before the suit was formally filed, but there was reason to believe that the receiver knew of the impending lawsuit. The Supreme Court of Iowa held that the discharge order was void as to plaintiffs for want of notice. To hold a tort claimant barred under the circumstances, it said, would "work injustice and cannot withstand close scrutiny. . . . [¶] Here a tort was committed (we are assuming) during the course of the receivership. Before the [plaintiff] started her action against the receiver, the receiver, without notice to [her], obtained his own discharge—and thereby, we are told, terminated his liability. [¶] We cannot believe such a rule would be good law. Meritorious claims ought not come to an end before the statute of limitations has barred them by a receiver's simply securing his own discharge without notice to the claimants." (*Id.* at p. 524.)

■ We find these cases persuasive and hold that the order discharging Griffin as receiver was void as to plaintiffs, who had no notice of the proceedings and whose claim was not accounted for in Griffin's final account.

■ Plaintiffs should be permitted to maintain their action against Griffin even if all funds have been disbursed and the receivership has been terminated. It is axiomatic that liability is not synonymous with ability to pay. Should they obtain judgment against Griffin for negligence in the performance of her duties as receiver, plaintiffs may possibly be entitled to recover from the surety on the performance bond. Code of Civil Procedure section 996.150 provides that even after a surety is released from liability on a bond, "[t]he bond remains in full force and effect for all liabilities incurred before, and for acts, omissions, or causes existing or which arose before, the release." (See also *Administrative Management Services, Inc.* v. *Fidelity & Deposit Co.* (1979) 89 Cal.App.3d 532, 535-536 [152 Cal.Rptr. 620].) Moreover, as noted in the *Copeland* case, Griffin may have incurred personal liability for disbursing all receivership assets without notice to plaintiffs. (*Copeland, supra,* 451 N.Y.S.2d at p. 689.) We leave those questions open for future resolution.

## DISPOSITION

The order and judgment of dismissal of receiver Diana Griffin and the order denying plaintiffs leave to amend, both filed May 19, 1988, are reversed. Costs of appeal are to be borne by respondent herein.

Cottle, J., and Fogel, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.